TEEVAL Co., INC., Landlord, Appellant, *v.* EDWIN H. STERN, JR., Tenant, Respondent.

Argued May 31, 1950; decided July 11, 1950.

F. T. B. REALTY CORPORATION, Landlord, Appellant, *v.* LOUIS GOODMAN, Tenant, Respondent.

Argued February 20, 1950; reargued May 31, 1950; decided July 11, 1950.

LEON LEIGHTON et al., as Trustees, Landlords, Appellants, *v.* MORRIS JAWROWER, Tenant, Respondent. (No. 1.)

Argued February 20, 1950; reargued May 31, 1950; decided July 11, 1950.

LEON LEIGHTON et al., as Trustees, Landlords, Appellants, *v.* MORRIS JAWROWER, Tenant, Respondent. (No. 2.)

Argued May 31, 1950; decided July 11, 1950.

BORDO CORPORATION, Landlord, Appellant, *v.* EPHRAEM D. WITTY, Tenant, Respondent.

Argued February 20, 1950; reargued May 31, 1950; decided July 11, 1950.

HENRY ISCOVITZ et al., Landlords, Appellants, *v.* JOSEPH PALETTA, Tenant, Respondent.

Argued February 20, 1950; reargued May 31, 1950; decided July 11, 1950.

*Robert S. Fougner* and *Osborne A. McKegney* for appellants in first and second above-entitled actions. I. The State rent control law is unconstitutional because it constitutes unreasonable and arbitrary exercise of the police power. (*Block* v. *Hirsh,* 256 U. S. 135; *Bowles* v. *Willingham,* 321 U. S. 503; *Twentieth Century Associates* v. *Waldman,* 294 N. Y. 571; *Home Bldg. & Loan Assn.* v. *Blaisdell,* 290 U. S. 398; *Worthen Co.* v. *Thomas,* 292 U. S. 426.) II. The State rent law is

invalid because the Legislature delegated a choice of three laws to the Governor and because the law does not provide adequate standards for the Administrator. (*Matter of Seignious* v. *Rice*, 273 N. Y. 44; *Matter of Small* v. *Moss*, 279 N. Y. 288; *Packer Collegiate Inst.* v. *University of State of N. Y.*, 298 N. Y. 184.) III. The State rent law is invalid because it incorporates Local Law No. 73 therein by reference. IV. The retroactive operation of the State rent law is invalid without an invocation of the police power which arbitrarily and unreasonably deprives appellant of its accrued rights. (*Ettor* v. *City of Tacoma*, 228 U. S. 148; *People ex rel. Reynolds* v. *Common Council of Buffalo*, 140 N. Y. 300; *Forbes Pioneer Boat Line* v. *Board of Comrs.*, 258 U. S. 338.) V. The retrospective operation of the State law is unconstitutional because it violates the supremacy clause of the United States Constitution. (*Bethlehem Steel Co.* v. *New York State Labor Relations Bd.*, 330 U. S. 767; *Testa* v. *Katt*, 330 U. S. 386; *Wasservogel* v. *Meyerowitz*, 300 N. Y. 125.) VI. A determination of invalidity of the retrospective provisions of the law requires a determination of invalidity of the entire law. (*F. T. B. Realty Corp.* v. *Goodman*, 300 N. Y. 140.) VII. Local Law No. 73 is unconstitutional because it is in derogation of the supremacy clause of the United States Constitution in that it is in a field pre-empted by the Federal Government and is in conflict with the provisions of the Housing and Rent Act of 1949 and regulations issued pursuant thereto. (*Case* v. *Bowles*, 327 U. S. 92; *Bethlehem Steel Co.* v. *New York State Labor Relations Bd.*, 330 U. S. 767.) VIII. Local Law No. 73 and the regulation issued pursuant thereto deprive appellant of property without just compensation in violation of the United States Constitution. (*Hall Realty Co.* v. *Moos*, 200 App. Div. 66; *Matter of Fifth Madison Corp.* [*New York Tel. Co.*], 297 N. Y. 155.) IX. Local Law No. 73 constitutes an unlawful delegation of legislative power to a commission in violation of the State Constitution. (*Matter of Small* v. *Moss*, 279 N. Y. 288; *Packer Collegiate Inst.* v. *University of State of N. Y.*, 298 N. Y. 184.) X. The validating act (L. 1950, ch. 1) violates the due process clauses of the Federal and State Constitutions because it retroactively deprives appellant of installments of increase which accrued prior to January 10, 1950, and because ex post facto it makes unlawful the demand for such install-

ments. (*Forbes Pioneer Boat Line* v. *Board of Comrs.*, 258 U. S. 338; *Ettor* v. *City of Tacoma*, 228 U. S. 148.)

*Louis G. Hart, Jr.*, for Tri-Reme Realty Corporation, and *Eugene R. Hurley* for Baldwin Gardens, Inc., *amici curiæ*, in support of appellant's position in first above-entitled action.

*Eugene J. Morris, Alfred J. Callahan* and *Edward D. Moldover* for respondent in first above-entitled action. I. The statute is within the police power. (*Brown Holding Co.* v. *Feldman*, 256 U. S. 170; *Levy Leasing Co.* v. *Siegel*, 230 N. Y. 634; *Guttag* v. *Shatzkin*, 230 N. Y. 647; *Home Bldg. & Loan Assn.* v. *Blaisdell*, 290 U. S. 398.) II. The existing situation is appropriate and needful for the exercise of the police power. (*People ex rel. Durham Realty Corp.* v. *La Fetra*, 230 N. Y. 429.) III. The statute is temporary and conditional. (*Home Bldg. & Loan Assn.* v. *Blaisdell*, 290 U. S. 398; *Fearon* v. *Treanor*, 272 N. Y. 268; *People ex rel. Durham Realty Corp.* v. *La Fetra*, 230 N. Y. 429.) IV. The statute is a moderate and reasonable exercise of the police power. (*Worthen Co.* v. *Kavanaugh*, 295 U. S. 56.) V. There is no improper delegation of legislative power in the State law. (*People* v. *Bowen*, 21 N. Y. 517; *Matter of City of Long Beach* v. *Public Service Comm.*, 249 N. Y. 480.) VI. There is no incorporation by reference of any other law into the State law. (*People ex rel. Everson* v. *Lorillard*, 135 N. Y. 285.) VII. It is immaterial whether the State law is valid without invocation of the police power. VIII. Section 13-a of the State law is a reasonable and moderate exercise of the police power. (*Chamberlin, Inc.*, v. *Andrews*, 271 N. Y. 1, 299 U. S. 515; *Anderson* v. *Mt. Clemens Pottery Co.*, 328 U. S. 680.) IX. The State law does not violate the supremacy clause of the United States Constitution. X. A determination of invalidity of the retroactivity provisions does not require a determination of invalidity of the entire law.

*Barnet Kaprow* for appellants in third and fourth above-entitled actions. I. Local Law No. 73 of 1949 of the City of New York and the State validating act thereof (L. 1950, ch. 1) are violative of the supremacy clause of the Federal Constitution and the due process clauses of the Federal and State Constitutions. (*Rice* v. *Santa Fe Elevator Corp.*, 331 U. S. 218; *Hines* v. *Davidowitz*, 312 U. S. 52; *International Shoe Co.* v.

*Pinkus,* 278 U. S. 261; *Case* v. *Bowles,* 327 U. S. 92.) II. The State rent law violates the " incorporation by reference " prohibition of the State Constitution. (*People ex rel. New York Elec. Lines Co.* v. *Squire,* 107 N. Y. 593; *Darweger* v. *Staats,* 267 N. Y. 290.) III. The State rent law, in its prospective and retroactive provisions, violates the due process clauses of the Federal and State Constitutions. (*Shaker Parkway Co.,* v. *Porter,* 157 F. 2d 920; *Cobleigh* v. *Woods,* 172 F. 2d 167.) IV. In respect to its retroactive provisions, it also, violates the supremacy clause of the Federal Constitution.

*Ed Dupree, General Counsel* (*Nathan Siegel* and *Louise F. McCarthy* of counsel), for Office of Housing Expeditor, *amicus curiæ,* appearing in second and third above-entitled actions. In enacting the Housing and Rent Act of 1947, as amended, Congress pre-empted the field of rent control throughout the nation. Since the provisions of the New York City local law as validated conflict, they cannot stand. (*Wasservogel* v. *Meyerowitz,* 300 N. Y. 125; *Case* v. *Bowles,* 327 U. S. 92; *Testa* v. *Katt,* 330 U. S. 386; *Fleming* v. *Rhodes,* 331 U. S. 100; *Lemke* v. *Farmers Grain Co.,* 258 U. S. 50.)

*Leo Isacson, Benjamin Weinberger* and *Phyllis Shelly Jaffe* for respondent in third and fourth above-entitled actions. I. The field of rent control has not been pre-empted by Congress. (*Matter of Tartaglia* v. *McLaughlin,* 297 N. Y. 419; *Reid* v. *Colorado,* 187 U. S. 137; *Hill Packing Co.* v. *City of New York,* 295 N. Y. 527.) II. Local Law No. 73 is not in conflict with Federal statutes. (*Kelly* v. *Washington,* 302 U. S. 1; *People* v. *Lewis,* 295 N. Y. 42; *Matter of Wallach* v. *Ross,* 298 N. Y. 806.) III. Local Law No. 73 does not violate the due process clauses of the United States Constitution. (*People ex rel. Durham Realty Corp.* v. *La Fetra,* 230 N. Y. 429; *Twentieth Century Associates* v. *Waldman,* 294 N. Y. 571.) IV. The State rent control law, enacted under the police power, is a reasonable means to a legitimate legislative end. (*Veix* v. *Sixth Ward Bldg. & Loan Assn.,* 310 U. S. 32; *Sproles* v. *Binford,* 286 U. S. 374.) V. The State rent law does not violate the due process clauses of the State and Federal Constitutions. (*Twentieth Century Associates* v. *Waldman,* 294 N. Y. 571; *Hadacheck* v. *Sebastian,* 239 U. S. 394; *Seese* v. *Bethlehem Steel Co.,* 168 F.

2d 58.) VI. There is no invalid " incorporation by reference " in the State rent law. (*People ex rel. New York Elec. Lines Co. v. Squire,* 107 N. Y. 593; *People v. Mailman,* 182 Misc. 870, 293 N. Y. 887.)

*Ruth Ranson* for appellant in fifth above-entitled action. I. This case is properly before the Court of Appeals on direct appeal. (*F. T. B. Realty Corp. v. Goodman,* 300 N. Y. 140; *Rosenbluth v. Sackadorf,* 190 Misc. 665; *Cerana Apts. Corp. v. Solomon,* 150 Misc. 906.) II. Under the supremacy clause of the United States Constitution, Local Law No. 73 and particularly subdivisions d and g of section U41–7.0 of the New York City Administrative Code are in irreconcilable conflict with the Federal Housing and Rent Act of 1949 and void. Congress intended to pre-empt the field in rent control. (*Bethlehem Steel Co. v. New York State Labor Relations Bd.,* 330 U. S. 767; *Testa v. Katt,* 330 U. S. 386.) III. Local Law No. 73 and particularly subdivisions d and g of section U41–7.0 constitute the taking of appellant's property without just compensation. (*Wasservogel v. Meyerowitz,* 300 N. Y. 125.) IV. The State rent control law constitutes unreasonable and unconstitutional exercise of the police power. (*Ettor v. City of Tacoma,* 228 U. S. 148; *City of Buffalo v. Chadeayne,* 134 N. Y. 163; *Carpenter v. Wabash Ry. Co.,* 309 U. S. 23.) V. The issue of the constitutionality of Local Law No. 73 is neither academic nor moot. VI. The State Rent Commission could not delegate to the Administrator the power to make law and therefore the State rent regulations are invalid. (*Manhattan Gen. Equipment Co. v. Commissioner of Internal Revenue,* 297 U. S. 129.)

*Walter Feldesman* and *Joseph G. Abramson* for respondent in fifth above-entitled action. I. The case is not properly before the Court of Appeals on direct appeal. There is involved a question other than a constitutional question. (*Carbonelli v. Bremer,* 186 Misc. 348.) II. Section U41–7.0 of the Administrative Code, as re-enacted by Local Law No. 22 and thereafter amended by Local Laws Nos. 41 and 73 and validated by the State Legislature, is valid. (*Matter of Molnar v. Curtin,* 273 App. Div. 322, 297 N. Y. 967; *People ex rel. Durham Realty Corp. v. La Fetra,* 230 N. Y. 429; *Block v. Hirsh,* 256 U. S. 135.) III. The State rent control law applies and is controlling. (*Matter of Tartaglia v. McLaughlin,* 297 N. Y. 419.)

*Henry N. Rapaport, Robert S. Garson* and *John F. X. Hasset* for appellants in sixth above-entitled action. I. The local law conflicts with Federal statute, regulation and policy and therefore violates the constitutional principle of Federal supremacy. (*Matter of Tartaglia* v. *McLaughlin,* 297 N. Y. 419; *Matter of Molnar* v. *Curtin,* 297 N. Y. 967; *Harrison* v. *Northern Trust Co.,* 317 U. S. 476.) II. The local law violates the Federal Constitution (5th, 13th, 14th Amendts.) and the State Constitution (art. I, § 7, subd. [a]). (*Markbreiter* v. *Woods,* 169 F. 2d 875; *Consolidated Water Power & Paper Co.* v. *Bowles,* 146 F. 2d 492; *Matter of Yanover* v. *Coster,* 275 App. Div. 956.) III. The prohibition against eviction is not justified under the police power. (*United States* v. *Macintosh,* 283 U. S. 605; *Home Bldg. & Loan Assn.* v. *Blaisdell,* 290 U. S. 398.)

*Harold M. Weinberg* for respondent in sixth above-entitled action. I. The Court of Appeals lacks jurisdiction to entertain this direct appeal. (*Powers* v. *Porcelain Insulator Corp.,* 285 N. Y. 54; *Lapchak* v. *Baker,* 298 N. Y. 89; *American Historical Soc.* v. *Glenn,* 248 N. Y. 445; *Coler* v. *Corn Exch. Bank,* 250 N. Y. 136; *Matter of Tishman* v. *Sprague,* 292 N. Y. 235.) II. No constitutional provision is violated by the local law.

*Nathan W. Math* for Temporary City Housing Rent Commission of the City of New York and *John P. McGrath, Corporation Counsel* (*Anthony Curreri, Alfred Weinstein, Stanley Buchsbaum* and *Joseph Jay* of counsel), *amici curiæ,* appearing in second, third, fifth and sixth above-entitled actions. I. Congress has not occupied the field of rent control and there is no conflict between the Federal statute and the local law. (*Cuyahoga Riv. Power Co.* v. *City of Akron,* 240 U. S. 462; *Pacific States Box & Basket Co.* v. *White,* 296 U. S. 176; *Hill Packing Co.* v. *City of New York,* 295 N. Y. 527.) II. Local Law No. 73, being a valid exercise of the police power, does not deprive the landlord of property without due process or just compensation. (*People ex rel. Durham Realty Corp.* v. *La Fetra,* 230 N. Y. 429; *Twentieth Century Associates* v. *Waldman,* 294 N. Y. 571; *Block* v. *Hirsh,* 256 U. S. 135.) III. The local law does not improperly delegate legislative authority, since adequate standards are provided. (*People ex rel. Durham Realty Corp.* v. *La Fetra,* 230 N. Y. 429; *Levy Leasing Co.*

v. *Siegel,* 258 U. S. 242.) IV. Its retrospective operation does not render the validating act objectionable. (*Matter of Tartaglia* v. *McLaughlin,* 297 N. Y. 419.) V. (On reargument): Since the State rent control law has been enacted, it is unnecessary on these appeals to determine the validity of the local law unless the State rent law is declared unconstitutional. VI. The sixth above-entitled action has become academic.

*Nathaniel L. Goldstein,* Attorney-General (*Abe Wagman, Wendell P. Brown* and *Beatrice Shainswit* of counsel), appearing in first, third, fourth and fifth above-entitled actions, pursuant to section 68 of the Executive Law, in support of the constitutionality of chapter 250 of the Laws of 1950. I. The statute, enacted in the face of a public emergency and designed to eradicate and avoid peril to the health, safety and general welfare of the citizens of the State, is a valid exercise of the State's police power and consequently does not impinge upon any constitutional provisions. (*Matter of Fay,* 291 N. Y. 198; *Carmichael* v. *Southern Coal & Coke Co.,* 301 U. S. 495; *Matter of Stubbe* v. *Adamson,* 220 N. Y. 459; *Bowles* v. *Willingham,* 321 U. S. 503; *Twentieth Century Associates* v. *Waldman,* 294 N. Y. 571.) II. The statute does not violate the constitutional prohibition against " incorporation by reference "; nor does it unlawfully delegate power to the Governor or the commission. (*United States* v. *Wallace & Tiernan Co.,* 336 U. S. 793; *People ex rel. Everson* v. *Lorillard,* 135 N. Y. 285; *Matter of Tartaglia* v. *McLaughlin,* 297 N. Y. 419; *Matter of Doyle,* 257 N. Y. 244; *Yakus* v. *United States,* 321 U. S. 414.) III. The four pending appeals which challenge the validity of the local law are now moot.

LOUGHRAN, Ch. J. In these six cases questions are raised as to the constitutional validity of two statutes. One is the New York State rent control statute which became effective May 1, 1950 (L. 1950, ch. 250). The other is the so-called Sharkey Law (Local Laws, 1949, No. 73 of City of New York; Administrative Code of City of New York, § U41–7.0) which was validated by the State Legislature (L. 1950, ch. 1) after this court had held it to be unconstitutional. (*F. T. B. Realty Corp.* v. *Goodman,* 300 N. Y. 140.)

We take up first the case of *Teeval Co., Inc.,* v. *Stern,* an action that was commenced in the Municipal Court of the City of New York by service of a summons dated May 1, 1950. The material facts follow.

Plaintiff, a domestic corporation, owns No. 1125 Park Avenue, a residential property in the city of New York. On September 15, 1948, the parties entered into an agreement whereby the plaintiff leased to the defendant an apartment in No. 1125 Park Avenue at a monthly rent of $268.34 for a term that ended on September 30, 1949. Upon the expiration of that lease, the defendant stayed on as a statutory tenant.

In 1943, the plaintiff landlord had registered No. 1125 Park Avenue with the Federal Office of Price Administration pursuant to the Federal Emergency Price Control Act of 1942 (U. S. Code, tit. 50, Appendix, § 901 *et seq.*), a statute which made the then existing rents the maximum that landlords could charge for housing accommodations. Federal rent control was continued by subsequent housing and rent acts. The 1949 act re-enacted a provision which had authorized the Federal Housing Expediter to make such adjustments of maximum rents as should be necessary " to remove hardships or to correct other inequities ". The 1949 act also provided: " In making and recommending individual and general adjustments to remove hardships or to correct other inequities, the Housing Expediter and the local boards shall observe the principle of maintaining maximum rents for controlled housing accommodations, so far as is practicable, at levels which will yield to landlords a fair net operating income from such housing accommodations." (Housing and Rent Act of 1947, § 204, subd. [b], par. [1], as amd.; U. S. Code, tit. 50, Appendix, § 1894, subd. [b], par. [1].)

Pursuant to the powers so conferred, the Federal housing regulations applicable to the city of New York were amended so as to enable a landlord to obtain leave to increase the rent when his " net operating income " from a building was less than " a fair net operating income ". The amended regulations were in part as follows:

" The net operating income from a building shall be considered to be less than a fair net operating income if such net operating income is less than 25 percent of the annual income in the case of a building containing less than five dwelling units, or

is less than 20 percent in the case of a building containing five or more dwelling units.

" * * * The adjustment * * * shall be in such amount as is necessary to bring the net operating income from the building (expressed as a percentage of annual income) to the median net operating income of landlords generally. This median is 30 percent of annual income in the case of buildings containing less than five dwelling units, and 25 percent in the case of buildings containing five or more dwelling units. * * *

" ' Annual operating expenses ' means all real estate taxes and other unavoidable operating costs necessary to the operation and maintenance of the building, plus depreciation but excluding mortgage interest and amortization * * *.

" ' Depreciation ' means the amount shown for the building in the latest required Federal income tax return, but in no event more than 21 percent of the annual income for a building containing less than 5 dwelling units or 16 percent of the annual income for a building containing 5 or more dwelling units." (Rent Regulations under the Housing and Rent Act of 1947, § 825.5 subd. [a], par. [18], as amd.)

The above-amended regulations were promulgated by the Federal Housing Expediter on May 3, 1949, and were made retroactive to April 1st of that year. On May 17, 1949, the plaintiff landlord filed a petition with the Office of the Housing Expediter for a " fair net operating income " rent increase.

Upon a certificate of the Housing Expediter stating his determination in respect of the plaintiff landlord's total annual income, total operating expenses and annual net operating income, the plaintiff landlord was granted an annual rent increase of $31,496.20 which was apportioned among its tenants. Accordingly, on September 27, 1949, notice was given to the defendant tenant that at the expiration of his lease on September 30, 1949, the monthly rent theretofore paid by him would be raised from $268.34 to $300.26, an increase of $31.92 each month.

The defendant tenant has refused to make payment of the increased rent and each month has paid only the original rent of $268.34. Having accepted these smaller rent payments " without prejudice " to its asserted right to collect the increased amounts, the plaintiff landlord demands in this action (1) payment of $31.92 for each of the months of October,

November and December, 1949, and January, February, March and April, 1950; and (2) payment of $300.26 as the rent alleged to be due and unpaid for the month of May, 1950. The increased rent is greater than that which was payable on March 1, 1949. As we shall see in a moment, the collection in the city of New York of any rent higher than the rent payable on that date is prohibited by the terms of the validated Sharkey Law for the period ending April 30, 1950, and for the period beginning May 1, 1950, by the terms of the State rent control statute.

The Sharkey Law was enacted by the City Council of the City of New York. It became effective October 7, 1949. Thereby rents in the city of New York were frozen at the rates that were payable on March 1, 1949, and collection of any greater rent by demand, action or summary proceeding was forbidden unless the temporary city housing rent commission had certified a higher rent to be just and reasonable. On December 29, 1949, this court held the Sharkey Law to be an unconstitutional violation of the Home Rule Amendment of the State Constitution (*F. T. B. Realty Corp.* v. *Goodman,* 300 N. Y. 140, *supra*). On January 10, 1950, the State Legislature undertook by chapter 1 of the Laws of 1950 to validate the Sharkey Law as of October 7, 1949, the date of the enactment of that local law by the City Council of the City of New York. Then in March, 1950, the State Legislature passed and sent to the Governor three rent control bills, one of which was signed by him on March 29, 1950, and is the State rent control statute here in question. The other two bills were vetoed by the Governor.

The State rent control statute (1) terminated as of May 1, 1950, Federal rent control in this State; (2) froze at the March 1, 1949, levels residential rents in the city of New York that had theretofore been controlled either by the Federal acts or by the Sharkey Law; and (3) froze as of March 1, 1950, residential rents that elsewhere in the State had theretofore been controlled by the Federal acts.

The defendant tenant moved for an order dismissing the complaint of the plaintiff landlord for insufficiency in law. This motion was granted by the Municipal Court of the City of New York on the ground that both the Sharkey Law and the State rent control statute were constitutional. Accordingly a judgment dismissing the complaint was entered. A direct appeal to this court was then taken by the plaintiff landlord.

Such an appeal is permitted when the only question involved is the validity of a local law or a State statute under the State or Federal Constitution (*F. T. B. Realty Corp.* v. *Goodman,* 300 N. Y. 140, *supra*). In the Municipal Court the plaintiff landlord could have insisted that its complaint was good for at least $268.34, since the defendant tenant apparently did not pay any rent at all for the month of May, 1950. But no claim of that kind was made. The plaintiff landlord was content to have its complaint dismissed unless the defendant tenant was to be held liable for the full sum demanded, including the $300.26 alleged to be due and unpaid for the month of May, 1950. Thus this direct appeal is rightly here (see *Twentieth Century Associates* v. *Waldman,* 294 N. Y. 571, 577).

The rent demanded for the month of May, 1950, as we have said, was $300.26, the amount to which the monthly rent had been increased by the Federal Housing Expediter. But the State rent control statute, as we have also said, forbids as of May 1, 1950, the collection in the city of New York of a rent higher than that which was there payable on March 1, 1949, viz., $268.34. Thus we are brought to this issue: Is the State rent control statute invalid because thereby rents payable on and after May 1, 1950, in the city of New York are rolled back to the March 1, 1949, levels?

Of course, such a statutory rollback of rents is nothing new. Similar New York statutes that were enacted a generation ago were then upheld. (See *Brown Holding Co.* v. *Feldman,* 256 U. S. 170; *People ex rel. Durham Realty Corp.* v. *La Fetra,* 230 N. Y. 429); and recently our State commercial rent control statute was held to be valid in the face of an attack upon its constitutionality. (*Twentieth Century Associates* v. *Waldman,* 294 N. Y. 571, *supra,* appeal dismissed 326 U. S. 697.) Indeed the plaintiff landlord concedes the existence of a housing emergency in this State and the consequent necessity for some degree of State control of rents and evictions. The principal complaint here is this: The State Legislature acted arbitrarily when, five years after the end of the " shooting war ", it enacted a statute which is more severe toward landlords than were the prior Federal acts.

But the 1949 Federal Housing Act contemplated freedom of a State to supplant Federal control of rents with regulations of

its own design. To that end, the Federal act declares: " Whenever the governor of any State advises the Housing Expediter that the legislature of such State has adequately provided for the establishment and maintenance of maximum rents, or has specifically expressed its intent that State rent control shall be in lieu of Federal rent control, with respect to housing accommodations within defense-rental areas in such State and of the date on which such State rent control will become effective, the Housing Expediter shall immediately make public announcement to the effect that he has been so advised. At the same time all rent controls under this [Federal] Act, as amended, with respect to housing accommodations within such State shall be terminated as of the date on which State rent control is to become effective." (Housing and Rent Act of 1947, § 204, subd. [j], par. [1], as amd.; U. S. Code, tit. 50, Appendix, § 1894, subd [j], par. [1].)

By the foregoing declaration Congress expressed its willingness to withdraw from the field of rent control in the States and to permit them to occupy that field. On the strength of that declaration, the Legislature of this State passed the State rent control statute here in question in the exercise of the inherent police power reserved to the State itself by the Tenth Amendment of the Federal Constitution (see *People ex rel. Durham Realty Corp.* v. *La Fetra,* 230 N. Y. 429, 442–443, *supra*).

The State rent control statute reveals the dissatisfaction of the Legislature with some of the results of the former Federal process of rent control (L. 1950, ch. 250, § 1). The Legislature, then, had reasons of its own for not following more closely than it did the pattern of the Federal system of rent control and, this being so, it is not for this court to say that the Legislature was bound to take a different course (see *Lapchak* v. *Baker,* 298 N. Y. 89, 95, and cases there cited).

The freezing of rents in the city of New York as of one date (March 1, 1949) and elsewhere in the State as of another date (March 1, 1950) is denounced by the plaintiff landlord as a wholly arbitrary classification. But this point need not detain us, for the challenged classification is too obviously justified to need explanation (*Brown Holding Co.* v. *Feldman,* 256 U. S. 170, 199, *supra*).

The plaintiff landlord criticizes the Legislature for having enacted three rent control bills each of which differed in some respects from the others. This procedure is assailed as a delegation of Legislative power to the executive, inasmuch as it was the Governor who chose the bill that became law. We cannot adopt that idea. If what the Legislature did in effect was to place upon the Governor the responsibility of selecting a system of State rent control, that action (whether wise or not) was not a delegation of legislative power to the executive qua executive, for in exercising his power to approve or veto legislation the Governor performs a legislative function (N. Y. Const., art. IV, § 7; *People* v. *Bowen,* 21 N. Y. 517; see, too, *Matter of City of Long Beach* v. *Public Service Comm.,* 249 N. Y. 480, 488–489).

In the view of the plaintiff landlord, the State rent control statute will deprive it of a '' fair return '' on its investment. If that point can be considered at all on this direct appeal (see *Lapchak* v. *Baker,* 298 N. Y. 89, *supra*), the answer is plain. The State rent control statute was enacted to meet a passing emergency. It does not contemplate a taking of the property of any landlord. Even though it may, now and then, compel an owner to operate his real property at a loss, the statute is not for that reason to be condemned as an arbitrary use of the police power (*Bowles* v. *Willingham,* 321 U. S. 503, 516–519).

Hence, as we conclude, the State rent control statute is valid insofar as thereby rents payable on and after May 1, 1950, in the city of New York are rolled back to the March 1, 1949, levels. Hence, too, the insistence of the plaintiff landlord on the full increased rent for the month of May, 1950, prevents recovery by it of any rent for that month.

We turn now to a different aspect of the controversy. Whether the plaintiff landlord is entitled to collect the arrears of rent for the period from October 1, 1949, to April 30, 1950 — a period prior to the effective date of the State rent control statute — is the question now to be determined. During all that period the Federal Housing and Rent Act was in effect in this State.

The defendant tenant takes his stand upon the validated Sharkey Law. The text thereof is in part as follows:

'' c. *Rents not to exceed maximum.* It shall be unlawful for any person to demand, accept or receive from any tenant for the

use or occupancy of any apartment a rent therefor greater than the rent which was being received by the landlord for said apartment on March first, nineteen hundred and forty-nine, unless the [temporary city housing rent] commission shall by appropriate order authorize the collection of a higher rent for said apartment.

" The commission is hereby authorized to adjust the rent of any apartment within the city of New York, due and payable therefor after March first, nineteen hundred and forty-nine, to such amount as it may deem just and reasonable consistent with the emergency, provided that the landlord shall allege and prove that he is presently providing substantially the same services, facilities, accommodations and maintenance which the landlord was legally obliged to provide on June thirtieth, nineteen hundred and forty-seven, and further provided that such rent so adjusted by the commission shall in no event be less than the rent payable therefor on the first day of March, nineteen hundred and forty-nine, except that the commission shall have the power by regulation or order to decrease the maximum rent for any apartment, if the commission should find that the landlord has decreased the services, facilities, accommodations, or maintenance to which the tenant was entitled on June thirtieth, nineteen hundred and forty-seven. * * *

" d. *Evictions.* No tenant shall be removed from any apartment by action or proceeding to evict or to recover possession, by exclusion from possession, or otherwise, nor shall any action or other proceeding be commenced for the collection of any rent greater than the rent due and payable on the first day of March, nineteen hundred and forty-nine or for non-payment of such greater rent unless the commission has certified that such rent for the non-payment of which the removal is sought or for the collection of which judgment is demanded, has before the commencement of such action or proceeding, been certified as just and reasonable consistent with the emergency, by the commission * * *.

" e. *Eviction certificate; application required.* Prior to the institution of any summary proceedings or any other action or proceeding to evict a tenant or to recover possession of an apart-

ment, except for non-payment of rent no greater than that which was being received by the landlord for said apartment on March first, nineteen hundred forty-nine, the person instituting such action or proceeding shall file in triplicate with the commission, a verified application for a certificate of eviction. Such application shall contain a detailed statement of the facts upon which such action or proceeding is based. The commission shall promptly transmit a copy of such application to the department of housing and buildings and the department of health, which departments shall promptly furnish the commission with such information or reports as the commission shall require concerning the premises and the tenants thereof, described in the application filed pursuant to this subdivision.

" The commission shall, as promptly as is practicable, render its determination granting or denying a certificate of eviction under subdivision d of this section and shall promptly notify the person filing such application for such certificate, of such determination."

The Sharkey Law was recommended to the City Council by the Council's Committee on General Welfare in a report which said: " This bill was introduced by the Vice-Chairman Mr. Sharkey, to correct a condition which was caused by the passage by Congress of the 1949 [Federal] Rent Control Act. Pursuant to such act the Rent Director, Tighe Wood, created a ' fair rent formula ' which in the metropolitan area of New York, has caused rent increases up to 50 per cent. * * * The bill [i.e., the Sharkey Law] would bar any evictions for a rental greater than that in existence on March 1, 1949, unless a certificate were procured from the City Temporary Rent Commission which would only be issued after a hearing in which both sides were represented and a finding that such increase was reasonable and fair."

In *Matter of Tartaglia* v. *McLaughlin* (297 N. Y. 419), this court said (p. 425) : " Emergency control of rents and evictions would seem to be an affair for concurrent Federal and State action, at least until the field is pre-empted by Congress and so long as local legislation in that field does not conflict with the letter or policy of any Federal enactment ". (See, also, *Loab Estates, Inc.,* v. *Druhe,* 300 N. Y. 176.) The city has attempted to justify the validated Sharkey Law as such concurrent legislation

consistent with the Federal act. But to our minds the above words of the committee of the city council unequivocally express an intention to override and defeat the rent-fixing formula of the Federal act. So read, the above-quoted provisions of the validated Sharkey Law are at war with article VI of the Federal Constitution which says: " This Constitution, and the Laws of the United States which shall be made in Pursuance thereof * * * shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." These words of our Federal Constitution made all the provisions of the Federal Housing and Rent Acts as much the policy of the State of New York as if the enactment thereof had emanated from our State Legislature (*Claflin* v. *Houseman,* 93 U. S. 130, 136; *Second Employers' Liability Cases,* 223 U. S. 1, 57). In a word, so much of the validated Sharkey Law as undertook to forbid collection of rent increases granted by the Federal Housing Expediter was void by operation of the supremacy clause of the Federal Constitution. Whether the same provisions of the Sharkey Law were void for any other reason, we do not decide.

We go back now to the State rent control statute. Section 13-a thereof makes these provisions:

" § 13-a. 1. The legislature hereby finds that a substantial number of tenants in this state may be subject to potential liability arising from certain provisions of the federal housing and rent act of nineteen hundred forty-seven, as amended, pursuant to which increases in maximum rentals were authorized; that an effort has been made to curb certain of such increases through the enactment of local laws which have been validated by state statute; that the validity of such local laws and state statute is presently the subject of litigation; that if such local laws or state statute are held to be invalid, wholly unexpected liabilities, substantial in amount and in some cases retroactive in operation will be imposed upon many tenants; that such claims will lead to evictions and create severe dislocation and hardship in many instances and engender uncertainty; that these occurrences would intensify the emergency arising from the acute shortage of dwellings; that pursuant to the federal housing and rent act of nineteen hundred forty-seven as

amended, enactment into law of this chapter, will supplant federal controls with state controls; and that such dislocation, hardship and uncertainty will interfere with the orderly regulation and control of residential rents contemplated by the re-enactment of this act. The legislature finds that all of the foregoing facts constitute a serious and substantial threat to the health, welfare and safety of the people of the state and enacts the following provision as an exercise of its police power.

" 2. No person shall be subject to liability in any action or proceeding commenced prior to or on or after the date this subdivision takes effect on account of the failure of such person to pay an increase in rental authorized by any order made by the federal housing expediter between March first, nineteen hundred forty-nine and the date this section takes effect, pursuant to the federal housing and rent act of nineteen hundred forty-seven, as amended, the collection of which was barred or purportedly barred by any local law enacted by the local legislative body, the board of estimate and the mayor of the city of New York and specified in chapter one of the laws of nineteen hundred fifty * * *.

" No court of this state, or of any municipality, shall have jurisdiction of any action or proceeding, whether instituted prior to or on or after the time this subdivision takes effect, to accord any remedy for the recovery of real property or for the possession thereof, for or on account of the failure of any person to pay any such increase, to the extent that such action or proceeding seeks to enforce any liability or a remedy with respect to any such increase * * *.

" 4. Notwithstanding any inconsistent provision of law, if any law which purports to control rents or evictions shall hereafter be held invalid or unconstitutional in whole or part, no action or proceeding for the collection of rent or for the recovery of real property or for the possession thereof, which was previously regulated, barred or limited in any way by such law, shall be commenced in any court until thirty days have elapsed from the date of the final judgment or order holding such law invalid or unconstitutional in whole or part. With respect to any such action or proceeding commenced prior to, and not reduced to final judgment on or before the date of such adjudication of invalidity or unconstitutionality, entry of judgment in

favor of the plaintiff shall be deferred for a like period upon motion of any party.''

The above provisions of the State rent control statute are said by the Attorney-General to have been drafted after the pattern of the Federal Portal-to-Portal Act of 1947 (U. S. Code, tit. 29, §§ 251, 252) and are here defended by him upon the authority of cases which sustained that Federal statute. The United States Supreme Court held in *Anderson* v. *Mt. Clemens Pottery Co.* (328 U. S. 680) that employees were entitled under the Fair Labor Standards Act of 1938 (U. S. Code, tit. 29, § 201 *et seq.*) to receive compensation for preliminary activities incidental to their work. That construction of the Fair Labor Standards Act resulted in numerous lawsuits against employers for large sums of money. To meet that situation, Congress enacted the Portal-to-Portal Act which retroactively wiped out employers' liability for such preliminary activities by their employees unless such activities had been made compensable by contract, custom or practice in effect at the time of the activity. This statute has been uniformly held constitutional (see, e.g., *Battaglia* v. *General Motors Corp.,* 169 F. 2d 254, certiorari denied 335 U. S. 887). The claim here is that the last-quoted provisions of our State rent control statute can be upheld on the analogy of cases like that just cited.

But there is an essential difference between abolition by Congress of rights created by it and an attempt by a State to abolish such rights. Under our system of government, Federal laws are supreme and cannot be repealed, abrogated or made unenforceable by State action (see *Testa* v. *Katt,* 330 U. S. 386, and cases there cited).

The Municipal Court of the City of New York has jurisdiction to adjudicate a claim for arrears of rent (N. Y. City Mun. Ct. Code, § 6, subd. 1). Section 13-a of the State rent control statute attempts to abolish or at least to suspend that jurisdiction solely in respect of claims for arrears of rent that have accrued by operation of an act of the Congress of the United States. The question so raised is not one of degree. Nor is it one of the reasonableness of the State statute. The power which the Legislature assumed to exercise in enacting section 13-a of the State rent control statute does not exist. The provisions of section 13-a are therefore wholly void.

But the invalidity of section 13-a of the State rent control statute does not vitiate any other provision thereof. Section 13-a has plainly been treated by the Legislature as a distinct and separable part of its statutory plan. Hence it may be stricken out while the other provisions of the State statute are allowed to stand. (See *People ex rel. Alpha Portland Cement Co. v. Knapp*, 230 N. Y. 48; cf. *F. T. B. Realty Corp. v. Goodman*, 300 N. Y. 140, *supra*.)

The complaint of the plaintiff landlord is, in consequence, a good claim for arrears of rent accruing from October 1, 1949, to April 30, 1950. But there can be no recovery here, as we have already said, of rent for the month of May, 1950.

The judgment in *Teeval Co., Inc., v. Stern* should be reversed, without costs, and the action remitted to the Municipal Court of the City of New York for further proceedings not inconsistent with this opinion.

The five remaining cases may be more shortly disposed of.

*F. T. B. Realty Corporation v. Goodman* is a summary proceeding brought in the Municipal Court of the City of New York for the recovery of possession of residential property in that city. The appellant is the petitioner-landlord; the respondent is the tenant. On August 23, 1949, the Federal Housing Expediter, pursuant to the "fair net operating income" formula of the Federal act, granted to the landlord a rent increase of $12.04 a month. Taking his stand upon the validated Sharkey Law, the tenant has refused to pay that increase for the period from October 1, 1949, to and including February, 1950. He has been upheld in that position by the Municipal Court which dismissed the proceeding. From the order of dismissal, the landlord appealed directly to this court. For reasons already stated, the order of the Municipal Court must be reversed, with costs, and the matter remitted to that court for further proceedings not inconsistent with this opinion.

*Leighton v. Jawrower No. 1* is a summary proceeding brought in the Municipal Court of the City of New York for the recovery of possession of residential property in that city. The appellants are the landlord-petitioners. The respondent is the tenant. On July 8, 1949, the landlords obtained an order from the Federal Housing Expediter increasing the tenant's monthly rent from $39 to $40.32. When the tenant refused to pay,

the landlords sought through this proceeding recovery of the increased rent to and including February, 1950. The Municipal Court dismissed the proceeding in reliance on the validated Sharkey Law. From that order of dismissal the landlords appealed directly to this court. For reasons already stated, the order of the Municipal Court must be reversed, with costs, and the matter remitted to that court for further proceedings not inconsistent with this opinion.

*Leighton* v. *Jawrower No. 2* is an action brought by the plaintiff landlords in the Municipal Court of the City of New York to recover from the defendant tenant rent for residential property in the city of New York for the month of May, 1950 and for balances of rent, representing increases granted by the Federal Housing Expediter, for March and April, 1950. Upon motion by the defendant tenant the complaint was dismissed for insufficiency on its face. From the judgment of dismissal the landlords appealed directly to this court. For reasons already stated, the judgment must be reversed, without costs, and the action remitted to the Municipal Court of the City of New York for further proceedings not inconsistent with this opinion.

*Bordo Corporation* v. *Witty* is a summary proceeding brought by the petitioner landlord in the Municipal Court of the City of New York. On October 17, 1949, the landlord had obtained a certificate from the Federal Housing Expediter decontrolling the apartment occupied by the respondent tenant in order that the apartment might be subdivided into a number of smaller residential units. The landlord thereupon brought this proceeding to evict the tenant, but was dismissed for failure to obtain a certificate of eviction from the temporary city housing rent commission pursuant to the validated Sharkey Law (see Administrative Code of City of New York, § U41–7.0, subd. g). From that dismissal the landlord appealed directly to this court, asserting that the validated Sharkey Law requirement of an additional certificate of eviction was an unconstitutional interference with the Federal statute. Prior to the reargument of this appeal, Federal rent control had been terminated in this State. In *Matter of Tartaglia* v. *McLaughlin* (297 N. Y. 419, *supra*) we held that in a situation like this the law in

existence at the time of our decision should be applied. Accordingly, the question presented by this appeal has now become academic and the appeal must for that reason be dismissed, but without costs.

*Iscovitz* v. *Paletta* is an action for a declaratory judgment that was brought in the Supreme Court, Bronx County. The plaintiffs, owners of residential property in the city of New York, obtained a certificate of eviction from the Federal Housing Expediter by establishing to his satisfaction, pursuant to the Federal Housing and Rent Act of 1947, as amended, that they sought in good faith to recover possession of an apartment occupied by the defendant as a tenant for the immediate purpose of permanently withdrawing that apartment from the rental market. The validated Sharkey Law, however, prevented the eviction of the defendant tenant for that purpose (see *Loab Estates, Inc.,* v. *Druhe,* 300 N. Y. 176, *supra*). In this action, the plaintiff landlords sought a judgment declaring the validated Sharkey Law to be in conflict with the Federal Housing and Rent Act and hence invalid. Their complaint was dismissed and they appealed directly to this court from the judgment of dismissal. As in the last case, this appeal presents only a question that is now academic and must be dismissed, but without costs.

In the first and fourth above-entitled actions: Judgment reversed, etc.

In the second and third above-entitled actions: Orders reversed, etc.

In the fifth and sixth above-entitled actions: Appeals dismissed, etc.

In the first, second, third and fourth above-entitled actions: Lewis, Conway, Desmond, Dye and Froessel, JJ., concur; Fuld, J., taking no part.

In the fifth and sixth above-entitled actions: Lewis, Conway, Desmond, Dye, Fuld and Froessel, JJ., concur.