11 N.Y.2d 259 (1962)
I. L. F. Y. Co., Appellant,
v.
Temporary State Housing Rent Commission et al., Respondents.
425 Realty Associates, Appellant,
v.
Temporary State Housing Rent Commission et al., Respondents.
Henry L. O'Brien, Appellant,
v.
Temporary State Housing Rent Commission et al., Respondents.
Barget Realty Corporation, Appellant,
v.
Temporary State Housing Rent Commission et al., Respondents.
In the Matter of Eager Realty Corp., Appellant,
v.
Thomas B. Parish, Local Rent Administrator, Respondent.
Court of Appeals of the State of New York.
Argued March 26, 1962.
Decided May 10, 1962.
Robert S. Fougner for I. L. F. Y. Co. and 425 Realty Associates, appellants. Albert W. Fribourg for Henry L. O'Brien and Barget Realty Corporation, appellants.
Irving Weissman for Eager Realty Corp., appellant.
Louis J. Lefkowitz, Attorney-General (Irving Galt and Sheldon Raab of counsel), in his statutory capacity under section 71 of the Executive Law.
Jacob B. Ward and Harold Zucker for Temporary State Housing Rent Commission, respondent.
William L. Messing for Morris H. Kates, John Bogart and Norman P. Smith, respondents.
Robert S. Garson for Thomas James, Inc., and others, amici curiæ.
Judges DYE, FULD, FROESSEL and VAN VOORHIS concur with Chief Judge DESMOND; Judge BURKE dissents in an opinion in which Judge FOSTER concurs.
*263 Chief Judge DESMOND.
These four actions and one proceeding were brought by owners of rent-controlled New York City residential properties for a declaration of unconstitutionality of so much of the 1962 amendments (L. 1962, ch. 21) to the State Emergency Housing Rent Control Law (L. 1946, ch. 274, as amd.) as prohibits any increase in rents (unless a tenant consents) during the period from the effective date of the amendments (Feb. 17, 1962) until May 1, 1962. On that latter date the City of New York pursuant to the 1962 act takes over rent control *264 administration within its boundaries. The 1962 act transfers from the State to any city of 1,000,000 or more population (in other words, New York City) rent control in that city (§ 1, subd. 2), requires such city to establish its own rent agency to carry on such control after May 1, 1962 (§ 1, subd. 4), authorizes the city to adopt local rent control laws and regulations effective after that date (§ 1, subd. 5) and as of that date transfers all rent control functions and duties from the State to the city agency (§ 1, subd. 6). The main attack of these suitors is against section 6 of the 1962 act which forbids any increase (absent voluntary written consent of a tenant) in regulated residential rents for the two and a half-month-period from February 17, 1962 to May 1, 1962. Subdivision 11 of section 1 explicitly provides for the continuance of processing by the new city agency of pending administration proceedings, and for the transfer of pending applications for that purpose.
Special Terms in New York and Kings Counties, holding that section 6 of the 1962 amendatory law was not violative of any constitutional rights of the owners, dismissed the four actions and one proceeding, respectively. The five owners took direct appeals to this court. Since these are direct appeals from the courts of original jurisdiction (Civ. Prac. Act, § 588, subd. 4), constitutional questions only may be presented and determined.
All five of the landlords take essentially the same position: that the February 17-May 1 freeze, added to previously mandated delays in ordering justified increases, makes the law as amended in 1962 unconstitutional as to them because, while continuing control over the rents, it "retroactively" suspends the operation of the machinery theretofore set up for providing reasonable rent adjustments. There is no question raised as to illegality of transfer of rent control from State to city.
There are different fact situations as to these several complainants. Plaintiff I. L. F. Y. Co. was the unsuccessful plaintiff in an earlier action against the State Commission, dismissal of which we affirmed last July (10 N Y 2d 263). In that suit I. L. F. Y. Co. was assailing April, 1961 amendments which postponed for a year commission action on the landlord's application filed by it in February, 1961 for higher rents to be based on the price paid for the property by I. L. F. Y. Co. on a purchase completed a week earlier, and which 1961 law forbade *265 retroactivity for any such increase if and when granted. I. L. F. Y. Co. now alleges unconstitutionality of the added delay mandated by the 1962 law turning rent control over to the city. Present plaintiff O'Brien, as to a property he had owned for many years, filed with the State authorities in July, 1961 an application for a rent increase calculated according to that part of the statute (Emergency Housing Rent Control Law [L. 1946, ch. 274, as amd.], § 4, subd. 4, par. [a], cl. [1]) which allowed the use of equalized tax assessment valuation as a rent base. Plaintiff Barget Realty Corporation, as the result of the 1962 statutory freeze above described, has been barred temporarily from getting action on an application which it based on expenditures it made for improvement and rehabilitation of its tenanted real property, which expenditures under the statute (§ 4, subd. 4, par. [a], cls. [6], [7]) and the Administrator's regulations would have justified upward adjustment of the rents. Plaintiff 425 Realty Associates and petitioner Eager are, like plaintiff I. L. F. Y. Co., faced with the 1962 law extension (until May 1, 1962, or later) of the one-year freeze legislated in 1961 as against rent increases based on recent sale prices of affected properties.
With our I. L. F. Y. Co. decision of last year (10 N Y 2d 263, supra) on the books, it would indeed be remarkable if we should hold the 1962 statutory freeze to be unconstitutional. Deferment is not the same as denial. Freezes and rollbacks of rent increases are, as we wrote in that earlier opinion, historically and constitutionally acceptable (see Teeval Co. v. Stern, 301 N.Y. 346, cert. den. 340 U. S. 876). The relatively short two and a half-month-hold-period ordered by the 1962 Legislature pending transfer of control to the city seems reasonably incidental to such a change-over. While the statute does not specify the reason for the short freeze, it is quite obvious that the suspension of the issuance of decisions on increase petitions was considered necessary for administration purposes  that is, to hold up increases until city control should begin to operate. Any such transfer necessarily produces some delays. It is, of course, presumed that the Legislature has investigated the situation and discovered a need for the requirement (I. L. F. Y. Co. v. Temporary State Housing Rent Comm., 10 N Y 2d 263, 269, supra, and cases cited). The 1962 act had been recommended *266 by the Joint Legislative Committee to Study Rents and Rental Conditions. Although these landlords had processed their several applications to points where favorable action was imminent, they had no "vested" rights to increase orders or to continuation of the rules or formulae on which their applications had been based (I. L. F. Y. Co. opinion, supra, p. 270, and cases cited). The Legislature concluded that one necessary or desirable condition of the concededly valid State-to-city rent regulatory power transfer was that there be a breathing spell during which no increase orders should be entered. This was a new situation requiring new treatment. We see nothing unconstitutional about the method chosen by the Legislature.
Since May 1, 1962 has now passed, we assume that the city has enacted and put into effect a local law for rent control, but the provisions, whatever they may be, of that local law are not before us and we do not take account of them in any way in making the present decision. Nor do we make any decision as to whether the new local law can or does affect any existing rights of any of the present appellants.
The judgments and order appealed from should be affirmed, with costs.
BURKE, J. (dissenting).
The relief sought in these actions brought to declare unconstitutional that part of the Local Emergency Housing Rent Control Act (L. 1962, ch. 21) which prohibited any increases in rents to which property owners might be entitled under the Emergency Housing Rent Control Law prior to May 1, 1962, when the State transferred administration of residential rent control to the city, should have been granted because the police power may not be used to serve mere expediency.
When the State has assumed to regulate the private property of a citizen of the United States, it is under an obligation to act justly. It is not a question of a citizen's vested rights in legislation, it is simply recognition of the rules of fair play which were observed before there were any formal laws. In this country a citizen has a right to expect that the rules imposed by the State which interfere with the use of his private property will not be changed by the State to his detriment after he has complied with the regulations, except for extremely serious reasons.
*267 Freezes and roll backs of rent increases which were granted by a Legislature after years of study are rarely warranted at this late stage of the emergency which was declared almost 20 years ago. Here the Legislature has superimposed a freeze on a freeze.
Although each of the plaintiffs-appellants stands in a somewhat different factual position, the constitutional issue presented, for practical purposes, is identical.
I. L. F. Y. Co., 425 Realty Associates and Eager Realty Corp. filed applications for rent increases based upon the sales price of their properties nearly a year before the effective date of the 1962 amendments to the law, which barred the issuance of orders for such rent increase by the State agency even if due; O'Brien filed a similar request based on a legislatively granted right to an increase in rents on the equalized assessed valuation of his property four months prior to an unauthorized order of the Governor suddenly halting action on such application and over seven months before the effective date of the "freeze". All have been unable to obtain orders for the increased rentals to which they are entitled under the 1961 law, as a result of the statutory "freeze".
Barget Realty Corporation filed its application based on substantial prior expenditures for capital improvements and rehabilitation of its property. These had been made in reliance on representations of the Rent Commission that the proposed improvements, upon their completion, would merit increases in rent.
The basic question which we are called upon to answer is whether this amendment of the State rent control statute providing for the elimination of rent adjustments which in each case had been legislatively authorized and could be easily determined is reasonable and consonant with a permissible exercise of the police power of the State. We do not believe that it is.
Were it not for the temporary nature of the rent control law, enacted under the police power of the State, and limited to periods of emergency, it would be unconstitutional (People ex rel. Durham Realty Corp. v. La Fetra, 230 N.Y. 429; Orinoco Realty Co. v. Bandler, 233 N.Y. 24, 29). We said as long ago as *268 1950 that "[t]he State rent control statute was enacted to meet a passing emergency" (Teeval Co. v. Stern, 301 N.Y. 346, 362). In Lincoln Bldg. Associates v. Barr (1 N Y 2d 413, 420) six years ago this court again stated that "Rent controls, all will agree, ought not to achieve a status of permanence in our economy. They have no justification except in periods of emergency [cases cited]."
Such an exercise of the police power must, to be valid, be reasonable. To meet that test, the means adopted must be reasonably necessary to accomplish an objective falling within the scope of the police power (see Good Humor Corp. v. City of New York, 290 N.Y. 312, 317; 9 N. Y. Jur., Constitutional Law, § 176).
Here "The only matter that seems to us open to debate is whether the statute goes too far." (Block v. Hirsh, 256 U. S. 135, 156.) So far as that query is concerned, there is nothing factual in connection with chapter 21 of the Laws of 1962, such as the threat of spiraling rents which justified the deferment in 1961, which indicates what threatening condition impelled the Legislature to incorporate the "freeze" in the law, and no legislative history, in the form of letters or debates, has been presented to us to assist in determining intent.
If we apply the standards heretofore respected, the "freeze" provision of the rent control law seems to us to go too far.
We realize that the Local Emergency Housing Rent Control Act is not a static law (L. 1946, ch. 274; L. 1950, ch. 250; L. 1951, ch. 443; L. 1953, chs. 320, 321; L. 1957, ch. 755; L. 1959, ch. 695; L. 1961, ch. 337). However, the repeated amendments were each made to meet a necessity and to prevent uncertainty, hardship and dislocation. In other words, each restriction was "reasonably adapted to accomplish its purpose" (People v. Arlen Serv. Stas., 284 N.Y. 340, 344). Rent control is a complex program, but one aimed, as respondents concede, at eventual but orderly restoration of a free market in housing accommodations. To this end the Legislature approved the fixing of rents through the use of sales price or the equalized assessed valuations or the cost of carefully prescribed physical improvements to the property.
The statute states that its provisions are necessary "in order to prevent uncertainty, hardship and dislocation [and are] designed to protect the public health, safety and general welfare" *269 (§ 1, subd. 1). Respondents suggest, without factual support, that the provision under consideration was intended to be in aid of the transition of controls from the State to the city. But, a "freeze" on only a portion of the work of the administration  the issuance of orders in one class of applications  i.e., rent increases authorized by law  cannot rationally be held to contribute to a smooth or orderly transition of responsibility.
This legislation has accomplished the opposite result. It has engendered disorder by placing an obstruction in the way of the normal processing of the applications by the State Rent Commission. It has caused the machinery of rent controls to be put out of joint by damming up the natural flow of applications and creating an extraordinary backlog of matters entitled to attention, while, at the same time, it induced idleness in the State agency which was fully staffed and capable of disposing of the business it was created to administer. It imposes unwarranted hardships on the appellants and gives rise to grave uncertainties. By rendering the existing laws impotent it nullified the prior legislative acts upon which the constitutional validity of the rent law depended.
"To sustain legislation under the police power the operation of the law must in some degree tend to prevent offense or evil, or preserve public health, morals, safety or welfare and it should appear that the interests of the public generally are served and that the means used are reasonably necessary for the accomplishment of the purpose and not unduly oppressive upon individuals. (Ives v. South Buffalo Ry. Co., 201 N.Y. 271, 301; Dobbins v. Los Angeles, 195 U. S. 223, 236.) The test is whether the regulation is reasonable within those limits." (Matter of Avon Western Corp. v. Woolley, 266 App. Div. 529, 533, affd. 291 N.Y. 687.)
It is manifest that this suspension was unconstitutionally onerous in the circumstances of the I. L. F. Y. Co., the 425 Realty Associates and the Eager Realty sales price type of applications where increases in rents previously provided for had been delayed for one year because of the deferment recently sanctioned by this court (I. L. F. Y. Co. v. Temporary State Housing Rent Comm., 10 N Y 2d 263); wrongfully extends the invalid *270 executive denial of the relief specifically allowed to property owners by the prevailing law in the O'Brien case, and is patently confiscatory in the Barget Realty Corporation case.
Where the Legislature has determined that landlords are entitled to a fair return on their investment (cf. People ex rel. Durham Realty Corp. v. La Fetra, 230 N.Y. 429, 443, 444), set up standards and the apparatus for such a result, and the Administrator has concluded that appellants are entitled to a rent increase, when, for a reason politic rather than just that result has been denied to them, there is a deprivation of property without the corresponding requisite showing of a public necessity.
The circumstances which were present in Teeval Co. v. Stern (301 N.Y. 346), where a rent freeze for a period of one year was held to be constitutional, were diametrically different. Here it is not the receiving agency, in need of time to study, that has imposed the freeze, but the well-established and experienced one which is relinquishing control and which is consequently under no disability to continue administration of its own law as it has done in the past and continues to do in other areas, even at the present time.
The State made itself responsible for rent control until May 1, 1962. So long as it continued to control appellants' rentals it could not shirk the responsibility it had accepted and constitutionally keep the "Machinery [which] is provided to secure to the landlord a reasonable rent" (Block v. Hirsh, 256 U. S. 135, 157) motionless, where, as here, it was guided obviously by whim.
Accordingly, the order and judgment in each action should be reversed.
Judgments and order affirmed.