Van Voorhis, J. (dissenting).
Rent control in New York City is no longer a war emergency measure, even though that be recited in the 1962 legislative enabling act. That recital is, as everybody knows, contrary to fact. If rent control is to be retained, it must have some other constitutional basis. The validity of rent control, as it exists today, must be tested by whether it is a legitimate form of continuing price control. It was introduced under the general price-fixing authority of the Office of Price Administration (OPA), and its administration was afterwards transferred from Federal .to State jurisdiction (cf. Teeval Co. v. Stern, 301 N. Y. 346, 357). The general price regulation under OPA was, of course, based upon the war emergency, but now that that is over and the rest of OPA has been abolished the constitutional validity of rent control has to be measured by such factors as have controlled the *1016 validity of price control in other fields, snch as coal, natural gas, milk, stockyards, grain elevators, pipe lines, not to mention carriers and public utilities which are more immediately affected with a public interest.
We are familiar, of course, with the cases upholding the constitutionality of various aspects of war emergency rent control, such as Twentieth Century Associates v. Waldman (294 N. Y. 571); Teeval Co. v. Stern (supra); Loab Estates v. Druhe (300 N. Y. 176); Matter of Tartaglia v. McLaughlin (297 N. Y. 419); Orinoco Realty Co. v. Bandler (233 N. Y. 24), and the cases arising at or about the time of the First World War such as People ex rel. Durham Realty Corp. v. La Fetra (230 N. Y. 429); Block v. Hirsch (256 U. S. 135); Brown Holding Co. v. Feldman (256 U. S. 170). But the indisputable fact requires us to acknowledge that the emergencies which gave rise to those legislative acts have long since passed. The question is whether subsequent conditions have arisen which, for other reasons, justify the invocation of the police power to regulate rental prices in large cities. Certainly the so-called net vacancy rate (computed mainly from among controlled housing accommodations) is not adequate by itself. Other factors taken in conjunction with that and other circumstances may or may not lend support to the indefinite continuance of housing price control as they have to price-controlled milk and other items mentioned above. Even if residential rent control be constitutionally supportable in large urban centers, it would have to be done on a different basis of classification than rendering it applicable only to the holdovers from an earlier era on the theory that we are still in the emergency which gave rise to their controlled tenancies. The enabling act recites that the emergency is temporary, and so it was, but residential rent control is not temporary. • Its history belies any such assumption, and its constitutionality must be tested by the same standards as those-which are applicable to any other form of price control. Summary judgment on this record is a perfunctory manner of determining this basic issue. In other instances where the nature of the commodity and surrounding conditions have been held adequate to sustain the power, trials have generally been held. It is impossible from these affidavits and from the mere reports submitted to the New York City Council to be apprised of what is fact and what is merely alleged to be factual, or to know *1017 which facts and factors are of controlling significance. This is a problem especially requiring expert testimony for its solution, but not an expert can be examined or cross-examined where the issue is disposed of by summary judgment. It is a gratuitous assumption, contrary to fact, that a complicated issue of such far-reaching importance can be decided summarily on a mere “ battle of the pamphlets ” without testimony, without opportunity to test conflicting conclusions in the crucible of cross-examination, or to assume that all of the relevant factors or conclusions are or could be contained in the brochures, for and against, that were submitted to the City Council. Indeed, appellants are being penalized for having submitted as much as they did by being deprived of a trial. It is especially artificial, as it seems to me, to reach such a result without considering the many factors that enter into this exercise of the police power and almost wholly on the basis of a single statistic, namely the vacancy ratio mainly in controlled housing, and without more elucidation of the different classes of housing (Chastleton Corp. v. Sinclair, 264 U. S. 543; Kress, Dunlap & Lane v. Downing, 286 F. 2d 212). The fact that people enjoying controlled rental housing accommodations do not wish to give them up, and that there are few vacancies where these depressed rents can be enjoyed, means that there must be nearly 20% vacancies in uncontrolled accommodations to produce the over-all net vacancy rate of 5% to require decontrol under existing standards. This is hardly an adequate yardstick by which to measure constitutionality.
The approach which it seems to me should be taken to the problem is illustrated by Nebbia v. New York (291 U. S. 502, 531, price fixing of milk); Tyson & Brother v. Banton (273 U. S. 418, theatre tickets); Power Comm. v. Pipeline Co. (315 U. S. 575, natural gas); Munn v. Illinois (94 U. S. 113, warehouses) ; Tagg Bros. v. United States (280 U. S. 420, stockyards); Sunshine Coal Co. v. Adkins (310 U. S. 381, bituminous coal act); Producers Transp. Co. v. Railroad Comm. (251 U. S. 228, pipe lines); Brass v. Stoeser (153 U. S. 391, grain elevators); Aetna Ins. Co. v. Hyde (275 U. S. 440, insurance); Old Dearborn Co. v. Seagram Corp. (299 U. S. 183, branded goods on resale); Mayo v. Canning Co. (309 U. S. 310, citrus fruits); Williams v. Standard Oil Co. (278 U. S. 235, gasoline), and Covington Bridge Co. v. Kentucky (154 U. S. 204, bridge tolls). In *1018 some of these cases price fixing was sustained and in others it was .denied but in none of them was the issue decided without consideration of all the factors or on the archaic basis of a war emergency which has long since disappeared. They were decided on current facts and on all of the relevant factors.
Few subjects are more involved than price fixing of items which in ordinary times—not war emergencies—have been held to fall on one side or the other of the constitutional line dividing what may be price fixed and what may not. This case now before us involves price regulation of residential accommodations, similar in principle to questions of price regulation of other commodities, and I think that it should stand or fall on principles governing the validity or invalidity of price control looking toward the indefinite future rather than by summary judgment on a theory of war emergency which has long since been contrary to fact. Appellants ask for a trial. We should, I think, decide this important question on the basis of evidence after trial, with the examination and cross-examination of expert and other witnesses. If it has to be decided on summary judgment, the order appealed from should be reversed since the recital in the statute shows that it is based on a war emergency which no longer exists (Chastleton Corp. v. Sinclair, supra).
Order affirmed, etc.