In the Matter of WILLIAM C. CHATLOS, Appellant, against JOSEPH D. McGOLDRICK, as State Rent Administrator, Respondent.

Argued February 27, 1951; decided April 12, 1951.

*Robert S. Fougner* and *Osborne A. McKegney* for appellant. I. Subdivision 1 of section 21 of the Rent and Eviction Regulations is invalid because it is in literal conflict with paragraph (a) of subdivision 1 of section 4 of the State Emergency Housing Rent Control Law. (*Settle* v. *Van Evrea,* 49 N. Y. 280; *Town of Putnam Valley* v. *Slutzky,* 283 N. Y. 334; *F. T. B. Realty Corp.* v. *Goodman,* 300 N. Y. 140, 746; *Teeval Co.* v. *Stern,* 301 N. Y. 346.) II. Subdivision 1 of section 21 of the regulations is invalid because it contravenes the intention of the Legislature.

*Nathaniel L. Goldstein, Attorney-General (Abe Wagman* and *Wendell P. Brown* of counsel), for respondent. I. Subdivision 1 of section 21 of the regulations is in full accord with the literal language of paragraph (a) of subdivision 1 of section 4 of the statute. (*United States* v. *Wallace & Tiernan Co.,* 336 U. S. 793; *Teeval Co.* v. *Stern,* 301 N. Y. 346; *F. T. B. Realty Corp.* v. *Goodman,* 300 N. Y. 140.) II. Subdivision 1 of section 21 of the regulations is designed to carry out the intent of the Legislature and to effectuate the purposes of the statute. (*Matter of Kaplan* v. *McGoldrick,* 198 Misc. 440; *United States* v. *American Trucking Assns.,* 310 U. S. 534; *Ozawa* v. *United States,* 260 U. S. 178; *Surace* v. *Danna,* 248 N. Y. 18; *City Bank Farmers' Trust Co.* v. *New York Central R. R. Co.,* 253 N. Y. 49; *People* v. *Ryan,* 274 N. Y. 149.) III. The Administrator's interpretation is, at the least, entitled to great weight. (*Fawcus Mach. Co.* v. *United States,* 282 U. S. 375; *United States* v. *American Trucking Assns.,* 310 U. S. 534; *Lightbody* v. *Russell,* 293 N. Y. 492; *Matter of Mounting & Finishing Co.* v. *McGoldrick,* 294 N. Y. 104; *New York Public Lib.* v. *City of New York,* 275 App. Div. 307, 300 N. Y. 726.) IV. The Legislature has amended paragraph (a) of subdivision 1 of section 4 of the Emergency Housing Rent Control Law so as to clarify the

intent and purpose of the language in the original section (L. 1951, ch. 36). This expression of legislative intent and purpose is entitled to great weight in resolving the issue of statutory construction. (*United States* v. *American Trucking Assns.*, 310 U. S. 534; *People ex rel. Westchester Fire Ins. Co.* v. *Davenport*, 91 N. Y. 574; *People ex rel. Mut. Life Ins. Co.* v. *Board of Supervisors*, 16 N. Y. 424; *Mosle* v. *Bidwell*, 130 F. 334; *First Nat. Bank* v. *Missouri*, 263 U. S. 640.)

DESMOND, J. This is an article 78 proceeding brought by a landlord to challenge the validity of subdivision 1 of section 21 of the regulations promulgated by the Temporary State Housing Rent Commission, pursuant to the 1950 State Emergency Housing Rent Control Law (L. 1950, ch. 250, § 4, subd. 1, par. [a]; McKinney's Unconsol. Laws, § 8584, subd. 1, par. [a]). That new State rent control law says that maximum rents to be established by the State Rent Commission shall be the same as those fixed on March 1, 1950, pursuant to the Federal act or pursuant to certain local laws, but that if the Federal law and any applicable local law prescribed different maximum rents for the same property, the local law maximum rent as of March 1, 1950, shall be the maximum rent under the new State law. That, of course, at least seems to say that the new State maximum shall be the same as the local law maximum of 1950, even though that local law maximum be higher than the Federally mandated maximum rent as of the same date. The State Rent Commission, which was authorized by that 1950 State act to make regulations, promulgated a regulation (§ 21, subd. 1) which says that the maximum rent shall be the maximum Federal rent of March 1, 1950, unless a lower maximum was prescribed pursuant to a New York City local law, in which event the local law maximum, and not the Federal maximum, shall be the maximum rent under the State law. It so turned out, by reason of an unusual set of circumstances hereafter described, that, as to the particular apartment owned by petitioner and involved herein, the local law rent therefor as of March 1, 1950, was *higher* than the Federal maximum rent for the same apartment. The respondent State Rent Administrator, obeying the State Rent Commission's regulation (§ 21, subd. 1) above referred to, fixed the rent therefor at the lower Federal maximum.

Petitioner then filed, with the State Rent Commission, a protest against the regulation (§ 21, subd. 1, *supra*) on the ground that it was contrary to the express language of the State emergency rent act itself. That is, petitioner reads the statute as saying that, where the Federal rent and the local law rent are different, the latter shall be the State rent, while the regulation, as above pointed out, says that where the local law rent was lower than the Federal, then the former shall apply. The State Rent Commission rejected petitioner's protest, the commission holding that its regulation carried out the actual meaning and intent of the statute. Petitioner thereupon brought this article 78 proceeding to review the Administrator's determination, and, at Special Term the petition was denied without opinion. Appellate Division, First Department, unanimously affirmed, without opinion, but granted leave to petitioner to appeal to this court (several identical holdings had previously been made by Special Term Justices — see *Matter of Kaplan* v. *McGoldrick,* 198 Misc. 440; *Matter of Rubin* v. *McGoldrick,* 277 App. Div. 1024).

After a long period of Federal regulation of rents, the Federal Congress passed an act permitting any State, at its option, to take over rent control within its boundaries. Thereafter, the State of New York, by its new State rent law (*supra*) which was passed on March 29, 1950, and became law on May 1, 1950, took over the whole job of rent regulation in New York State. Paragraph (a) of subdivision 1 of section 4 of said new State rent law is as follows: " At the time this act shall become effective, the commission shall establish maximum rents for housing accommodations which shall be the same as those prescribed on March first, nineteen hundred fifty, pursuant to the federal housing and rent act of nineteen hundred forty-seven, as amended, or local laws specified in chapter one of the laws of nineteen hundred fifty. Where there were different maximum rentals prescribed pursuant to such laws on March first, nineteen hundred fifty, the maximum rental established hereunder shall be the same as that prescribed pursuant to the local laws specified in chapter one of the laws of nineteen hundred fifty ".

We must admit that the statute, taken at its face, says that, where the Federal maximum rent as of March 1, 1950, differs

from the maximum rent fixed by a local law as of that same date, the latter shall prevail. The statute, unlike the regulation, does not say that where the Federal maximum and the local law maximum are different, the *lower* of those two shall prevail. However, the courts below in this case, and other lower courts in other cases, have held that the legislative intent was that the *lower* of those two rents should be the permissible maximum under the new State act. If that be correct, then the State Rent Commission's regulation (§ 21, subd. 1), complained of here, is valid as expressing the actual intent of the Legislature.

One of the local laws referred to in paragraph (a) of subdivision 1 of section 4 of the State law was, of course, the so-called Sharkey Law, a New York City local law of which we have heard a great deal in the past (see *F. T. B. Realty Corp.* v. *Goodman,* 300 N. Y. 140, and *Teeval Co.* v. *Stern,* 301 N. Y. 346). There is no doubt, as is made plain in *Teeval Co.* v. *Stern* (*supra,* p. 365) that the main purpose of the Sharkey Law was to " override and defeat " the rent provisions of the Federal act. The Sharkey Law, in terms, froze rents in New York City at March 1, 1949, rates and forbade the collection of any higher rent. We held that to be unconstitutional in *F. T. B. Realty Corp.* v. *Goodman* (*supra*) and, later, after the State Legislature attempted to validate the Sharkey Law, we held that so much of the Sharkey Law as undertook to forbid the collection of rent increases granted by the Federal authorities after March 1, 1949, was invalid as an interference with Federal control. The discussion of the Sharkey Law, in the Chief Judge's opinion for this court, in *Teeval Co.* v. *Stern* (see pp. 362, 365) shows that the primary purpose of the Sharkey Law was to prevent the taking effect, in New York City, of any Federal increases granted after March 1, 1949. And, once we realize that such was the purpose of the Sharkey Law, we must agree with the courts below. The Legislature, in saying, in the new State act, that, when a Federal maximum rent as of March 1, 1950, differed from a local law rent as of the same date, the local rent should govern, was talking about the numerous cases where the Sharkey Law had tried to forbid Federal *increases.* In other words, the Legislature had in mind the usual and numerous cases where the Sharkey Law rent was lower and the

Federal maximum higher, and the Legislature was not considering the isolated cases (of which this is one) where the converse was true. Incidentally, it should be noted at this point that the invalidation (*supra*) of the Sharkey Law by this court, has no effect on the present controversy. The new State act itself (§ 14, subd. 2) says that the local laws are referred to therein solely for purposes of identification, and that any invalidity of the local acts will have no effect on their use as points of reference.

The situation which brought about, as to this particular apartment, the peculiar result that the Sharkey Law rent as of March 1, 1950, was higher, not lower, than the Federal maximum was this: the premises here involved was a so-called luxury apartment; paragraph (1) of subdivision (b) of section 204 of the Federal Housing and Rent Act of 1947 (U. S. Code [1946 ed., Supp. I], tit. 50, Appendix, § 1894) had authorized, as to such apartments, voluntary leases at rent not more than 15% above the previous maximum rent, and the Federal statute further said that any apartments that went under such voluntary leases should be automatically decontrolled after December 31, 1947; pursuant to that authorization this landlord voluntarily leased this apartment for a monthly rent of $207 but the tenant cancelled that lease before its expiration so that under the then Federal decontrol of the apartment, the landlord was in a position to, and did, validly make a new uncontrolled lease at $250 a month. Under the Federal Housing and Rent Act of 1948 (U. S. Code [1946 ed., Supp. II], tit. 50, Appendix, § 1894), it was provided that any such properties so leased should go back to control upon the termination of the voluntary lease, and so the lawful rent for this apartment under the Federal system continued at $250 until April 1, 1949. Thus, the lawful rent was $250 on March 1, 1949, the freeze date under the Sharkey Law, but the Federal act which went into effect on April 1, 1949, again recontrolled apartments of this type and provided in effect that they should go back under control as of April 1, 1949, at the rent fixed by the original voluntary lease which, in this instance, was $207. In other words, the Sharkey Law freeze date of March 1, 1949, happened to be a date at which the valid rent of this apartment was $250, but a new Federal act

which took effect the next month, sent that maximum rent back to $207. Accordingly, it came about that, as to this apartment, the Sharkey Law rent as of the critical date (March 1, 1950) was $250, whereas the Federal maximum was only $207.

It seems entirely clear that, although the Legislature did not say so in so many words, its use of the Sharkey Law maximum as a point of reference was solely occasioned by the legislative belief, which was correct as to the vast majority of cases, that Sharkey Law rents, when different from Federal maxima, were lower than the latter.

Of course, the argument of appellant here is that we must follow the literal language of this statute. To do so here would, however, be to thwart the obvious legislative intent (see subdivision 1 of section 13-a of the 1950 State act, in which the Legislature says in effect that it is acting to prevent tenants from being subjected to the *increases* ordered by Federal law).

After this case was decided by the Appellate Division, the 1951 Legislature took the matter in hand and proceeded to make a formal declaration that the Legislature had never intended that, when Sharkey Law rents were *higher,* they should prevail. When the Legislature reconvened in January, 1951, it found before it a report by the State Temporary Commission to Study Rents, etc. (a survey and recommending body which is different from the State Rent Commission which fixes rents). That report pointed out to the Legislature that the 1950 State act had failed clearly to express the legislative intent that the Sharkey Law rent should govern only when it was lower. The commission reminded the Legislature that the Governor, in signing the 1950 act, had stated that the bill fixed the rents at either the Federal or local level of March 1, 1950, '' whichever is lower ''. The State Temporary Commission called to the Legislature's attention that the Appellate Division had sustained its view as to what the 1950 law meant, and that the Attorney-General had given an opinion to the same effect. The commission then recommended that the matter be clarified by the enactment of another statute. The new statute, chapter 36 of the Laws of 1951, reads as follows: '' *Legislative intent.* It is the intent of the legislature by this act to clarify the provisions of chapter two hundred fifty of the laws of nineteen hundred fifty. It is

not intended hereby to make any substantive change in such law, nor is any diminution, impairment or increase of rights or liabilities intended hereby.''

That enactment was approved by the Senate unanimously, and in the Assembly, by a vote of 143 to 1. As the Attorney-General points out in a supplemental brief here, about 80% of the members of the 1951 Legislature were in the 1950 Legislature also. It is, of course, true that the Legislature cannot come back a year later and by a new law, control the interpretation of the law it passed a year earlier. However, we held, almost a century ago, that, when the Legislature does tell us what it meant by a previous act, its subsequent statement of earlier intent is entitled to very great weight (see *People ex rel. Mut. Life Ins. Co.* v. *Board of Supervisors,* 16 N. Y. 424, 435, 436). Judge SHANKLAND's opinion in that case says that, while the Legislature's statutory declaration as to what was its true intent is not binding in the courts, it '' is entitled to respect as a legislative construction of an ambiguous phraseology.''

We conclude, on the whole picture, that the 1950 Legislature plainly meant that where the Federal and local maxima were different, the lower should prevail. Rules of construction are not entirely satisfactory guides in such matters, but a good approach is suggested by cases like *Holy Trinity Church* v. *United States* (143 U. S. 457, 472) where, affirming the power of courts so to construe statutes as to rule out absurd and unexpected results, the Supreme Court, in conclusion, said: '' It is the duty of the courts, under those circumstances, to say that, however broad the language of the statute may be, the act, although within the letter, is not within the intention of the legislature, and therefore cannot be within the statute '' (see *Lake Shore & M. S. Ry. Co.* v. *Roach,* 80 N. Y. 339, 344; *Matter of Meyer,* 209 N. Y. 386, 389).

The order should be affirmed, with costs.

LOUGHRAN, Ch. J., LEWIS, CONWAY, DYE, FULD and FROESSEL, JJ., concur.

Order affirmed.