BRIGHT HOMES, INC., Respondent, *v.* HENRY WRIGHT et al., Defendants; ROBERT E. HERMAN, as State Rent Administrator, Intervenor-Defendant-Appellant, et al., Intervenor-Defendant.

Fourth Department, April 27, 1960.

356

*Harold Zucker* and *Emory Gardiner* for intervenor-defendant-appellant.

*Dillon, Dillon, Dillon & Burke* for intervenor-defendant.

*George E. Gasner* for respondent.

BASTOW, J.   The State Rent Administrator, an intervenor in this action, appeals from a judgment declaring that rent controls ended in the City of Lackawanna on July 1, 1959.

The legal problem presented centers upon a resolution adopted by the Common Council of that city on June 25, 1957.

The resolution, so far as here material, states "that an emergency exists in the city of Lackawanna due to the shortage of housing accommodations [and] by reason of such emergency, the Common Council * * * hereby elects pursuant to the statutes * * * to continue the application of rent control on all housing accommodations except 1, 2 and 3-family houses whether or not occupied by the landlord. * * * This resolution shall remain in full force and effect until June 30, 1959." We had occasion to consider this identical resolution in *Matter of Bright Homes* v. *Weaver* (7 A D 2d 352, affd. 6 N Y 2d 973) and there held, for reasons here immaterial, that the enactment continued rent controls after June 30, 1957 as to occupied but not vacant residential space.

Plaintiff, the owner of a multiple dwelling building in that city, contends, and so Special Term decided, that this resolution effectively terminated all rent controls of residential space in the city after June 30, 1959. We are unable to agree with this interpretation of the resolution.

It is a familiar rule of statutory construction that courts will look at the contemporary history of the statute and the historical background thereof as an aid in its interpretation. These aids will show the circumstances under which the statute was passed, its object and the mischief at which it was aimed (2 Sutherland, Statutory Construction, § 5002). The application of this rule is particularly helpful in an area such as rent control that has been considered by the Legislature so frequently over a period of years.

Residential rent controls in one form or another have existed in this State since 1943. Until 1950 control was exercised under various Federal enactments. In that year the State took over the exclusive control of residential rents (L. 1950, ch. 250) by amendment of the so-called "stand-by" statute (L. 1946, ch. 274). In 1951 the State Residential Rent Law was substantially amended. (L. 1951, ch. 443.) It is important to note that this enactment provided that the "act, and all regulations, orders and requirements thereunder shall terminate on June thirtieth, nineteen hundred fifty-three." (§ 1, subd. 2, as amd. by L. 1951, ch. 443.) Thereafter and up to the present, residential rent controls with various modifications and relaxations have been continued only for two-year periods ending in odd-numbered years. (§ 1, subd. 2, as amd. by L. 1953, ch. 321; § 1, subd. 2, as amd. by L. 1955, ch. 685; § 1, subd. 2, as amd. by L. 1957, ch. 755; § 1, subd. 2, as amd. by L. 1959, ch. 695.)

In 1953 the Legislature, upon recommendations of the New York State Temporary Commission to Study Rents and Rental Conditions (N. Y. Legis. Doc., 1953, No. 43, p. 17), amended the State Residential Rent Law to grant to the local governing bodies of counties and cities the right to pass a resolution upon stated conditions decontrolling any specified class of housing accommodations in such city or county. (§ 12, subd. 2, as amd. by L. 1953, ch. 321, § 9.)

Two years later in 1955 the Legislature adopted a new concept of decontrol. In place of the former grant of local option to decontrol, the enactment terminated rent control after June 30, 1955 in any city or town within certain specifically named counties, including Erie County, with which we are here concerned. The local governing body of any such municipality, however, was empowered to forestall decontrol by resolution adopted prior to June 30, 1955. Moreover, any city in Erie County, such as Lackawanna, could subsequently by appropriate resolution upon a finding of emergency conditions request the State Rent Commission to re-establish rent controls with respect to all or any particular class of housing accommodations with certain stated exceptions. (§ 12, subd. 3, as amd. by L. 1955, ch. 685.)

The enactment with which we are here concerned was passed in 1957 (L. 1957, ch. 755). By amendment of section 12 (subd. 3, par. [c]) of the basic law cities in Erie County were eliminated from those municipalities having the right to request re-establishment of residential rent controls. In a new paragraph (d) of subdivision 3 of section 12 rent controls in any city or town in three named counties, including Erie County, were terminated on June 30, 1957, except that the governing body of such a municipality by resolution, adopted not later than June 30, 1957, declaring the continuance of emergency conditions therein, could " elect to be excluded from the operations of this paragraph (d) providing for the termination of rent control therein, to the extent specified in such resolution."

It is against this statutory background that the City of Lackawanna adopted the resolution under consideration. As we have seen, the very statute granting this power to forestall all decontrol in the city (L. 1957, ch. 755) had simultaneously amended subdivision 2 of section 1 to provide that the " provisions of this act, and all regulations, orders and requirements thereunder shall terminate on June thirtieth, nineteen hundred fifty-nine." The question immediately arises as to whether the careful draftsman would not have fixed the terminal date in the resolution for the continuance of rent controls (as

Lackawanna did) as coterminous with the date the Legislature had fixed for the termination of all residential rent controls throughout the State.

This interpretation is consistent with other parts of the resolution. Thus the Common Council found the existence of an emergency in the city due to the shortage of housing accommodations and acted thereon. This emergency had existed since 1943 and it would appear to be difficult for a legislative body to determine in advance that an emergency that had existed for 14 years would cease to exist at a date 2 years in the future. As we have seen, the Legislature never made an attempt to fix the period of the emergency for longer than 2 years. Biennially since 1951 the subject has been re-examined and the rent law continued, with various modifications, for another 2 years upon a finding that an emergency continued to exist.

It is pointed out, however, that the statute empowering the adoption of the resolution permitted a municipality to elect to be excluded from total decontrol "to the extent specified in such resolution." It is said that the word "extent" was meant to include not only the class of housing accommodations but also the period of time that controls should continue. There would be validity to this contention if some date other than the terminal date of the State Residential Rent Law had been selected. Thus, an officer of plaintiff in his affidavit refers to the City of Hudson where resolutions were three times adopted continuing controls from year to year and finally the city took no further action and permitted all controls to terminate. (See State Rent and Eviction Regulations, § 9, par. 15, as amd.) This clearly demonstrated an intent to have controls end on the specified date. But when Lackawanna by its resolution took advantage of the full life of the rent control law we conclude that the terminal date fixed in the resolution should be treated as surplusage. (Cf. *Matter of Carter* v. *Kalamejski,* 255 App. Div. 694, 699, affd. 280 N. Y. 803.)

The resolution was so treated by the State Rent Administrator when it was transmitted to him immediately following adoption thereof pursuant to the requirement of the statute. By Amendments 66 and 70 to the State Rent and Eviction Regulations the Administrator construed the resolution as containing no time limitation and to be an absolute rejection of the total decontrol provisions of the statute. When the meaning of a statute is doubtful, a practical construction by a public officer whose duty it is to enforce it is entitled to consideration. (Cf. *City of New York* v. *New York City Ry. Co.,* 193 N. Y. 543.)

" While it is true that, whenever the language of a statute is clear and unambiguous, we are required under ordinary rules of construction to give effect to its plain meaning * * * this is not to say that literal meanings of words are to be adhered to or suffered to defeat the general purpose and manifest policy intended to be promoted * * *. In applying a statute, surrounding circumstances may not be ignored." (*Matter of Capone* v. *Weaver*, 6 N Y 2d 307, 309.) The vital portion of the resolution before us is the declaration that an emergency existed in the city due to the shortage of housing accommodations and by reason thereof the council elected to continue rent control on all housing accommodations with certain minor stated exceptions. If the remainder of the resolution limiting its effect to a period of two years is construed literally it is necessary to ignore the surrounding circumstances and ascribe to the governing body clairvoyant power to determine that at the end of two years there would be no emergency and no shortage of housing accommodations. On the other hand, if the expiration date used in the resolution is treated as " a mere vestige of the language used by the draftsman " (*Matter of Carter* v. *Kalamejski, supra*, p. 699) to indicate that the election to forestall decontrol was to continue during the lifetime of the statute, the manifest intent of the resolution would be given meaning. To adopt the contention of respondent and follow the literal language of the resolution would thwart the obvious intent of the council. (Cf. *Matter of Chatlos* v. *McGoldrick*, 302 N. Y. 380, 387.) It has recently been written that " it is a commonplace that a literal interpretation of the words of a statute is not always a safe guide to its meaning. Indeed, in extreme situations this doctrine has been carried so far that language inescapably covering the occasion has been disregarded when it defeats the manifest purpose of the statute as a whole [citing cases]. " (LEARNED HAND, J., in *Peter Pan Fabrics, Inc.* v. *Martin Weiner Corp.*, 274 F. 2d 487, 489.)

The conclusion here reached is fortified by a study of what took place legislatively in 1959 — the year in which it is claimed all rent controls terminated in the City of Lackawanna. Governor Rockefeller, in a special message to the Legislature on February 9, stated, among other things, that, " In the years since 1950, some progress has been made toward restoration of the balance between housing demand and supply. However, the imbalance still continues in many areas. * * * The public necessity for these controls persists, and in certain areas they must be strengthened. The past pattern of legislation has been of extensions for two-year periods, and I suggest

that pattern be followed. I recommend, therefore, that existing residential rent controls be continued for another two-year period and that the law be strengthened in certain respects.'' (N. Y. Legis. Doc., 1959, No. 48, p. 3.)

The Temporary State Commission to Study Rents and Rental Conditions in a report to the Legislature dated March 25, 1959, stated, in part as follows: '' the Commission experiences no difficulty in finding that the emergency heretofore declared to exist continues sufficiently to justify a continuance of the emergency rent control laws. * * * The Commission finds that the transition from regulation to a normal market of free bargaining between landlord and tenant has not yet materialized.'' (N. Y. Legis. Doc., 1959, No. 45, pp. 18–19.)

While the State Residential Rent Law was in other respects amended (L. 1959, ch. 695), no new grants of power to municipalities, such as Lackawanna, similar to those of 1955 and 1957 were given therein. In other words, the Legislature froze all residential rents in communities which had elected prior to June 30, 1957 to continue controls. Thus, as to any municipality which simply passed a resolution prior to that date continuing controls, there is, and can be, no decontrol because of the absence of legislative grant of power to the municipality. But because the resolution adopted by Lackawanna fixed a terminal date coterminous with the expiration of all residential rent controls in the State, it is contended that all such properties have been decontrolled leaving the city helpless to take further action.

We conclude that such an interpretation of the resolution is unrealistic. Such a literal reading of the enactment would defeat the general purpose and policy found in the rent control law. The terminal date of June 30, 1959 set forth in the resolution should be treated as surplusage and disregarded as defeating the manifest purpose of the resolution as a whole when considered in the light of the rent laws, their object and the remedies they seek to afford during a period of emergency.

The judgment and order appealed from should be reversed and the cross motion of the State Rent Administrator for summary judgment in his favor granted.

All concur, except HENRY, J., who dissents and votes for affirmance for the reasons given by the Special Term. Present — WILLIAMS, P. J., BASTOW, HALPERN, McCLUSKY and HENRY, JJ.

Judgment and order reversed and rights of parties declared in accordance with the opinion, without costs of this appeal to any party.