Jones, J.
We hold that chapter 132 of the Laws of 1976 (commonly known as the Stavisky-Goodman Law) was duly enacted over the Governor’s veto. The Assembly voted to override the veto on March 31, 1976. We conclude that the veto was likewise overridden in the Senate on April 13, 1976, in conformity both with the provisions of section 7 of article IV of the New York State Constitution and with the rules of the Senate. We also reject the other challenges to the validity of the chapter raised by respondents.
In October and November, 1975 the Education Committee of the New York State Assembly conducted a series of public hearings in New York City to evaluate the impact on the quality of education of the existing financial emergency in the State and City of New York. On the basis of those hearings and ancillary studies, the committee reported to the Assembly in February, 1976 that the New York City school system was bearing a disproportionate share of the budget reductions necessitated by the city’s financial plight, that education, not inherently a municipal service but a State responsibility, was suffering from the fact that it was funded through the munici *537 pal budget, and that the city’s school system needed guaranteed support in the municipal budgetary process, which could be provided by State legislation requiring a minimum appropriation for the system within the city’s budget. The committee’s chairman, Assemblyman Leonard P. Stavisky, introduced a bill which, as adopted by the Assembly on January 21, 1976, amended section 2576 of the Education Law to require that annually there be appropriated for public elementary and secondary education in the City of New York "an amount equal to the average proportion of the total expense budget of such city, as amended, appropriated for the purposes of the city school district of such city in the three fiscal years of such city immediately preceding the [current] year”. On February 2, 1976 the bill, introduced by Senator Roy M. Goodman, passed the Senate.
On March 18 the bill as adopted by both houses of the Legislature was vetoed by the Governor. In compliance with the mandate of section 7 of article IV of the Constitution[1] it was thereon returned with the Governor’s objections to the Assembly, the house in which it had originated.
On March 31 the veto was overridden by the Assembly by the required two-thirds vote. When the bill was sent to the Senate, however, on April 8 the motion to override failed to garner the necessary two-thirds support in that house. Immediately after the result of the vote was announced, a motion to reconsider the defeated motion to override was carried by a roll call ballot, but consideration was deferred when the Senate then promptly passed a motion to table the revived motion to override.
On April 13, after favorable action on a motion to take from the table and extended debate, the motion to override the Governor’s veto was passed by two thirds of the Senate. The principal question on this appeal is whether by that action the *538 Stavisky-Goodman bill was effectively enacted over the Governor’s veto.
In this article 78 proceeding by the Board of Education of the New York City School District to compel respondents, the City of New York, its Mayor, Board of Estimate, City Council and Comptroller, to modify the city’s 1976-1977 expense budget to increase the appropriation to the Board of Education to no less than 21 Yi% of the total expense budget (which petitioner contends is the proportion required by the StaviskyGoodman Law) the courts below have held that the vote in the Senate on April 13, 1976 overriding the Governor’s veto was a nullity, classifying it as a second reconsideration of the Stavisky-Goodman bill not permitted under the Constitution and the Senate rules.
We reach a contrary conclusion.
At the very threshold we confront the fundamental question whether, under our polity of distribution of powers, the judiciary may inquire into the propriety or legality of the internal procedures by which the Legislature enacted chapter 132 of the Laws of 1976. We have only recently explicitly recognized in another context that the courts should be hesitant to intervene in the internal affairs of the Legislature (New York Public Interest Research Group v Steingut, 40 NY2d 250, 257). In some situations the judiciary has no power to intrude on the legislative process; in others, while it has the power, its exercise of such authority should be marked by respectful constraint in recognition of the status of the Legislature as one of the other two branches of State government. We conclude that in this instance the judiciary has and may properly exercise authority to determine the effectiveness of the legislative action of the Senate, as a component of the constitutionally prescribed process for overriding an executive veto. While in general the courts will not interfere with the internal procedural aspects of the legislative process, judicial review may be undertaken to determine whether the Legislature has complied with constitutional prescriptions as to legislative procedures (Norwick v Rockefeller, 33 NY2d 537; Matter of Schneider v Rockefeller, 31 NY2d 420, 434; Finger Lakes Racing Assn. v New York State Off-Track Pari-Mutuel Betting Comm., 30 NY2d 207, 219-220; People v Devlin, 33 NY 269; Franklin Nat. Bank of Long Is. v Clark, 26 Misc 2d 724).[2]
*539 Proceeding then to consideration of the merits of the present appeal, we note first that section 9 of article III of the Constitution vests in each house of the Legislature the power to determine the rules of its own proceedings and that, in the exercise of that power, the Senate by resolution number nine adopted rules for the year 1976, including section 8 of rule V, "Proceedings”, which provided in relevant part: "Reconsideration. a. When a question has once been put and decided, it shall be in order for any Senator to move for the reconsideration thereof; but no motion for the reconsideration of any vote shall be in order after the bill, resolution, message, report, amendment, nomination or motion, upon which the vote was taken, shall have gone out of the possession of the Senate; nor shall any motion for reconsideration be in order unless made on the same day on which the vote was taken, or within the next three days of the actual session of the Senate thereafter. Nor shall any question be reconsidered more than once.” By the adoption of this rule the Senate determined that all substantive questions to be acted on in the 1976 session were subject to a single motion to reconsider.
We turn then to section 7 of article IV of the Constitution (n 1, supra, p 553), which both courts below held was violated by the Senate override vote of April 13, 1976. That section expressly provides that after executive veto a bill shall be returned to the house in which it originated with a statement of the Governor’s objections, and that that house shall "proceed to reconsider it”. If two thirds of the originating house shall vote to override, the bill then goes to the other house by which it shall likewise be "reconsidered”. It is apparent that by the use of the verb "reconsider” in this constitutional provision it was not intended to refer to the familiar parliamentary procedure (here embodied in Senate rule V, § 8) by which a deliberative assembly again takes up action it has previously effected, to confirm, to amend or to nullify that action; in short, to "reconsider” in the constitutional sense is not the same as to reconsider in parliamentary usage. In the case of an executive veto, the previous action of the legislative houses in passing the particular bill has already been effec *540 tively nullified by the action of the Governor; it is only in consequence of the constitutional provision that the bill comes before the Legislature again. What is assured by the constitutional mandate of "reconsideration” is that the Legislature shall address the bill a second time, with the possibility, after review of the bill and the Governor’s objections, of new legislative action by which the two houses may by a two-thirds vote in each override the veto of the Governor. The Constitution provides that in such event the bill shall "become a law notwithstanding the objections of the governor”. In both political and legislative reality the issue as to whether to override is discrete and quite different from the earlier question as to whether to enact the legislation in the first place.
Thus, on April 8, 1976, the question before the Senate, as phrased by its presiding officer, was, "ought [the StaviskyGoodman bill] become a law notwithstanding the veto of the Governor”. The motion that initiated this item of legislative business and brought on the question was an original main motion "that the veto of the Governor be overridden”. As would be true of any other main motion bringing an item of substantive legislative business before the house, this motion was subject to all the procedural steps available under the applicable rules of the Senate. Thus, the legislative address to the question before the house included, inter alia, the possibility of one motion for reconsideration after the question had been initially acted on. Other than its prescription as to the manner of tallying the final, effective vote, we find nothing in the Constitution which foreclosed recourse to normal parliamentary procedure in the Senate’s consideration on the return of the vetoed bill.
The only pertinent historical antecedent called to our attention, while distinguishable to the extent that in that instance there was never a final vote on the motion to override, constitutes persuasive precedential authority for the proposition that a motion to reconsider is in order when the Senate addresses a motion to override an executive veto. In 1879 following the failure of the Senate to override the Governor’s veto of "An act supplemental to the Code of Civil Procedure”, a motion to reconsider was carried and the matter then laid upon the table, never thereafter to be taken from the table. In that instance and, even more important, in the present, no objection was raised to the motion to reconsider. Absent such objection, followed by a ruling by the presiding officer and *541 possibly a vote on an appeal from such ruling, we must take it that there was unanimous consent to the motion to reconsider. Certainly both instances provide evidence of the practical interpretation placed by the Senate on its own rules of procedure, namely, that a motion to reconsider is in order when the Senate is disposing of a main motion to override a Governor’s veto. It would be inappropriate for the courts to intervene to abrogate the Senate’s views as to the conduct of its own legislative procedures other than in some cases to enforce a constitutional prescription.
The motion to reconsider—which suspended all action dependent on the vote to be reconsidered until either the reconsideration was completed or the time for further action had expired (Robert’s Rules of Order [rev], p 270)[3]—as well as the motions to table and to take from the table and the final revote on the override motion were all incident to and normal parliamentary aspects of the final action on the main motion to override the veto. Thus, in our analysis, there was but a single item of legislative business before the Senate—should the veto be overridden—and the Senate took no more action in the process of its disposition of that item than it might have taken with respect to any other main motion before the house. Even if the provisions of section 7 of article IV of our State Constitution be interpreted to permit but a single legislative consideration of a motion to override, nothing suggests that such consideration must be restricted to a single vote in a truncated process quite foreign to normal parliamentary procedure. (Cf. Kay Jewelry Co. v Board of Registration, 305 Mass 581; State ex rel. Coleman v Lewis, 181 SC 10.)
Much emphasis has been laid by respondents on what are said to be persuasive precedents in the Congress of the United States. In 1844 when the House of Representatives was considering whether to override a presidential veto under a substantially similar constitutional provision, after there had been a failure to override on the first vote a motion was made to reconsider. The Speaker ruled that a motion to reconsider was not in order. On appeal the ruling of the Speaker was sus *542 tained by vote of the full House. (5 Hinds, Precedents of House of Representatives, § 5644 [1907].) In 1913 a similar ruling was made and upheld. When the House failed to override on the first vote, a member offered a motion to reconsider. On a point of order being raised from the floor, the Speaker, referring to the 1844 ruling and the apparent acquiescence of the House in that ruling over the span of the intervening years, again ruled the motion to reconsider out of order and his ruling was accepted by the House (8 Cannon Precedents of House of Representatives, § 2778 [1936]).
In our evaluation, recognition of these rulings serves only to support the fundamental proposition that, subject to some constitutional strictures, any deliberative assembly is the final arbiter of its own internal procedures. The House of Representatives effectively determined that in its House the normal motion to reconsider could not be applied to a proposal to override a presidential veto. These Federal rulings might well have been relevant to any consideration by the President of our State’s Senate had an objection been raised to the motion to reconsider. As stated, however, no such objection had been voiced in the Senate in 1879 and none was raised in April, 1976. Had there been an objection and had a ruling been made and sustained that a motion to reconsider was not in order, we would, of course, be concluded thereby. On the other hand, for the court without that predicate to impose on' our State Senate a parliamentary ruling accepted by the Congress for the conduct of its internal affairs could indeed be classified as judicial usurpation.
It is thus our conclusion that the Stavisky-Goodman bill was effectively passed over the Governor’s veto in the Senate as well as in the Assembly and became law, notwithstanding the objections of the Governor.
The several remaining grounds on which the validity of chapter 132 is attacked are unavailing. First, the legislation does not run afoul the home rule provisions of the Constitution. Education is expressly made a State responsibility (NY Const, art XI, § 1), and is explicitly exempted from home rule restriction (art IX, § 3, subd [a], par [1]). We have held that education is a State concern (Lanza v Wagner, 11 NY2d 317, 326), and that legislation dealing with matters of State concern even though of localized application and having a direct effect on the most basic of local interests does not violate the constitutional home rule provisions (e.g., Wambat Realty Corp. *543 v State of New York, 41 NY2d 490; Robertson v Zimmermann, 268 NY 52; Adler v Deegan, 251 NY 467; City of New York v Village of Lawrence, 250 NY 429). Indeed the Stavisky-Goodman Law was an amendment to the prior, long-standing statutory requirement of a minimum appropriation expressed in absolute rather than relative terms (see Education Law, § 2576, subd 5, prior to 1976 amendment).
Second, we agree with Special Term that the statutory reference to "the total expense budget of such city, as amended” for the immediately preceding three fiscal years does not create such difficulties of implementation as to vitiate the statute. As to the first two of the three years, no uncertainty at all obtains because those budgets will in each case have been finally amended before the figures are required for the purpose of applying the Stavisky-Goodman Law. For the third and only year as to which the city may claim ambiguity, we believe that the city’s own practice when it is faced with annual budgets which remain subject to amendment for a substantial part of the following year can provide a reasonable construction of the phrase "as amended” and permit implementation of the statute to accomplish its intended purpose. The New York City Charter had required that the Mayor’s budget message reflect the current budget "as last modified as of the fifteenth day of March of the current year” (§ 117, subd b, par 2). The Mayor’s proposed budget published about April 15 and the budget as finally adopted in early summer both set forth the current expense budget as amended through March 15. Finally, the passage by the Legislature in June, 1976, following the override of the Governor’s veto of the StaviskyGoodman Law, of amendments to that law to "clarify” the calculation of the three-year base period for computing the percentage to be appropriated, which specified that the third year’s expense budget should be "as amended as of March 15” but which failed to become effective because of subsequent executive veto, is strong evidence of the prior legislative intent that the law as originally enacted was to be and should be interpreted as requiring inclusion of the budget of the last preceding year as amended on March 15 (cf. Matter of Chatlos v McGoldrick, 302 NY 380, 388).
Finally, as Special Term concluded, the city’s argument that it is not obligated to comply with the statute in question because the Board of Education did not file a budget estimate by September 1, 1975 "merits no discussion” (88 Misc 2d 179, *544 190). Again, prior practice is a complete response; at least until advance notice of intention to insist on compliance with the statutory directive such practice gave rise to an effective estoppel. The Deputy Chancellor of the school system states that the Board of Education has never, within the memory of anyone connected with the budgetary process, submitted a budget estimate in September nor been requested to do so. The city on this appeal has not controverted that statement. Not only that, but compliance with any filing as to fiscal 1976-1977 was an impossibility inasmuch as the filing date for any budget estimate for that year had expired seven and one-half months before the Stavisky-Goodman Law was enacted. To construe the law as would one dissenter would be to nullify the effective date, February 1, 1976, expressly fixed by the Legislature.
It remains to be expressly stated that in upholding the Stavisky-Goodman Law we do not reach or consider the several arguments urged on the courts below and then on us on this appeal as to the relationship between the Stavisky-Goodman Law and the Financial Emergency Act (L 1975, ch 868). Nor do we now decide which law should control if there is an irreconcilable inconsistency between them. We do not intend by this disclaimer to suggest that the Stavisky-Goodman Law is merely "an expression of policy and exhortation” (88 Mise 2d 185). On the contrary, standing alone it mandates a minimum appropriation for the purpose of the city school district of the City of New York. Whether, however, and to what extent, if at all, the appropriations and expenditures pursuant thereto are subject to the provisions of the Financial Emergency Act or to oversight or intervention by the Emergency Financial Control Board cannot properly be decided in the present proceeding because that board is not a party to the proceeding. The record does not disclose that that board has ever considered a requested appropriation made in accordance with thé dictate of the Stavisky-Goodman Law, and cannot be said either to have waived its right, if any, to object thereto or to have acquiesced therein.
Because we do not resolve issues with respect to the interrelation between the Stavisky-Goodman Law and the Financial Emergency Act, it would be inappropriate to grant the relief sought by way of mandamus in the present article 78 proceeding. Accordingly, to grant the relief desired to the maximum extent permitted in the procedural posture of this appeal, *545 pursuant to the provisions of CPLR 103 (subd [c]) we convert this article 78 proceeding to an action for a declaratory judgment. As so converted we remit the case for the entry of a judgment in conformity with this opinion declaring: that chapter 132 of the Laws of 1976 was duly enacted and does not violate home rule proscriptions; that the reference in the statute to the total expense budget of the city as amended shall refer with reference to the fiscal year of the city immediately preceding any current year to that budget as amended as of March 15; and that the failure of the Board of Education to have filed a budget estimate by September 1, 1975 does not excuse the city from its obligation to comply with the law. Such judgment shall, however, contain appropriate express reservation as to the interrelation of the Stavisky-Goodman Law and the Financial Emergency Act.
The order of the Appellate Division is accordingly reversed, with costs, and the case remitted to Supreme Court, New York County, for further proceedings in accordance with this opinion.

. Insofar as relevant, the section provides: "Every bill which shall have passed the senate and assembly shall, before it becomes a law, be presented to the governor; if he approve, he shall sign it; but if not, he shall return it with his objections to the house in which it shall have originated, which shall enter the objections at large on the journal, and proceed to reconsider it. If after such reconsideration, two-thirds of the members elected to that house shall agree to pass the bill, it shall be sent together with the objections, to the other house, by which it shall likewise be reconsidered; and if approved by two-thirds of the members elected to that house, it shall become a law notwithstanding the objections of the governor. In all such cases the votes in both houses shall be determined by yeas and nays, and the names of the members voting shall be entered on the journal of each house respectively.”

. Parenthetically we observe that the "wisdom of legislative enactment is a matter *539 for the determination of the Legislature and not the courts” (Matter of Rosenthal v Hartnett, 36 NY2d 269, 273). Thus, we presume to express no view as to the desirability or practicability of the Stavisky-Goodman Law (cf. Montgomery v Daniels, 38 NY2d 41, 56; People v Broadie, 37 NY2d 100, 117-118; Matter of Taylor v Sise, 33 NY2d 357, 365).

. The Senate rules contain no express statement as to the effect of a motion for reconsideration, just as they generally do not set forth basic parliamentary rules and details. There thus is applicable the principle set forth in Matter of Anderson v Krupsak (40 NY2d 397, 405) that when the Legislature has not adopted rules for a particular subject or purpose it "is governed by the generally accepted rules of parliamentary procedure which flow from general principles of common law”.