OPINION OF THE COURT
Thomas Marcelle, J.
Petitioner Hognestad (landlord) brought a nonpayment proceeding (RPAPL 711 [2]). The petition alleged that respondent Rabideau (tenant), who ran a barbershop, had failed to pay any rent for six months. At the return date of the petition, the court allowed the tenant to provide an oral answer to the petition (22 NYCRR 210.7). Instead of answering, the tenant requested an adjournment to obtain counsel. The court granted the adjournment but admonished:
“Under the law, we have to resolve this case in ten days unless there is a mutual agreement otherwise. So you are going to have to work very quickly to get counsel. [Counsel] is familiar with these cases. Call [him] today and advise him that the Judge has set an inflexible trial date in one week.”
On the day of trial, the tenant explained she had contacted counsel just the prior day. There was a problem—counsel was engaged elsewhere and could not appear. Tenant’s counsel had talked with the landlord’s counsel to obtain consent for a further adjournment of the case. The landlord refused.
At the end of its regular session, the court held a conference in chambers to determine if a resolution was possible or whether an adjournment might be consented to. Neither could be achieved. The landlord took the position that he and his witnesses took time from work and he lacked the desire to absorb that cost again. Further, given the court’s trial calendar, the next trial slot would be two weeks away which the landlord deemed too long to be acceptable in his effort to regain possession of his property.
*979 The court took tenant’s request for the adjournment under advisement. The court researched the matter and found a decision on point. In Matter of Carlton Assoc. v Bayne (191 Misc 2d 54 [Sup Ct, Kings County 2002]), the identical fact pattern was presented—a pro se party seeking an adjournment beyond the 10-day limit in order to get counsel. The court held that judges have the inherent power to adjourn a case beyond RPAPL 745 (1)’s 10-day limit (191 Misc 2d at 59; see also Paladino v Sotille, 15 Misc 3d 60, 62 [App Term, 2d Dept, 9th & 10th Jud Dists 2007] [citing Carlton Assoc. in reversing a trial court’s decision not to grant an adjournment in a nonpayment proceeding]). Despite this precedent, the court denied, in this case, the tenant’s request for an adjournment.
It is no grand moment in judicial history when a court denies an adjournment; but neither is it a small thing to disagree with the learned ruling of another court. One of the most important roles of the judiciary is to articulate the logic behind its rulings. Courts distinguish, erode, adopt, adapt, harmonize and refine prior cases. These opinions, having been faithfully preserved by state and federal reporters for hundreds of years, provide the substance for advocates and judges to argue and reason. The judiciary’s wonderful devotion to this cause allows the law to advance. Since this court’s ruling disagrees with a decision dealing with the same issue, it is, therefore, incumbent upon it to explain why.
The crux of the problem resides in the time restraints which RPAPL 745 (1) imposes upon the trial of nonpayment cases. RPAPL 745 (1) provides in relevant part: “At the time when issue is joined the court, in its discretion . . . , may adjourn the trial of the issue, but not more than ten days, except by consent of all parties.”
Whether a judge has the authority to adjourn a trial beyond the 10-day limit devolves into a twofold inquiry: (1) does section 745 permit a court, on its own accord, to adjourn nonpayment proceedings beyond 10 days and (2) if section 745 denies the ability of a court to grant such an adjournment, then does section 745 violate the separation of powers doctrine.
The answer to the first question turns on how section 745 is construed. In Carlton Assoc., the court “rejected] a literal reading of section 745 (1) and [held] . . . that section does not preclude the grant of an adjournment within . . . [the court’s discretion] beyond the 10 days prescribed by statute without the consents of the parties” (191 Misc 2d at 59). For the reasons *980 described below, the court cannot adopt such a construction of section 745.
Section 745 (1) has two parts: (1) the proscriptive rule: the court may not adjourn the trial for more than 10 days; and (2) the exception to the rule: unless all the parties consent. Each part of the statute needs to be examined in turn. First, the proscriptive part of the statute is cast in altogether definite terms. The legislature might well have composed the statute to say that nonpayment cases be tried expeditiously. It did not; rather, the legislature chose a different route—it set a time limit, 10 days. The court finds that when the legislature said 10 days, it meant 10 days.
The second part of the statute deals with the exception to the rule—a single exception—an extension beyond 10 days requires consent by all parties. It could be argued that implied in all statutes (at least those dealing with procedural time frames) there exists an invisible yet inalterable exception that permits modification of deadlines when the ends of justice so require. In Carlton, the court found that this exception is implied given the inherent power of judges to control their calendars.
This court certainly accepts that such an exception exists in the case of scarce judicial resources. It may well be true on occasion that the court has more trials than trial slots over a 10-day period. In which case, it would be impossible to hold a trial in 10 days. The legislature cannot command a court to perform the impossible and is presumed not to have done so. Accordingly, courts have “the power ... to construe statutes as to rule out absurd and unexpected results” (Matter of Chatlos v McGoldrick, 302 NY 380, 388 [1951]). However, there should be no confusion on the limitation of this statutory canon—an exception can be created out of necessity but not for convenience. The justification to continue the case here, as in Carlton, was the unavailability of counsel, not the unavailability of a trial slot. Thus, under the present facts a statutory construction driven by necessity should not be employed.
The principle applicable here is the paramount rule that the judiciary should construe laws to animate the intention of the legislature. The starting point for discerning that intent is the language of the statute (Yatauro v Mangano, 17 NY3d 420, 426 [2011]). The words of the statute and what those words convey, in context, is what the statute means. And where, as here, a statute is unambiguous, the courts must give effect to its plain meaning (People v Brown, 25 NY3d 247, 250 [2015]).
*981 Section 745’s exception to the proscriptive rule is crystal; the power to adjourn a trial beyond 10 days requires the consent of all parties. Again, the legislature could have chosen to allow an adjournment where justice so required. The legislature knows how to employ such exception—and frequently does—but it did not here.[1] Thus, the court is left to conclude that the legislature knowingly chose to deprive judges of the power to adjourn a case without the consent of all parties.
Having concluded that section 745 fails to permit a judicial exception to the 10-day limit, the court begins a new inquiry— whether the legislature impermissibly invaded the province of the judiciary by limiting a judge’s ability to adjourn a case. This is a separation of powers issue.[2]
Although the doctrine does not appear as such in the State Constitution, separation of powers has “deep, seminal roots in the constitutional distribution of powers among the three coordinate branches of government” (Cohen v State of New York, 94 NY2d 1, 11 [1999]). The Constitution gives each branch distinct roles: The legislative branch creates the law, the executive branch enforces the law, and the judicial branch interprets the law and decides cases and controversies that arise under the law. When one branch disrupts the ability of the other branch to carry out its function, the separation of powers principle is *982 implicated. The court is “the final arbiter of true separation of powers disputes” (id.).
The Carlton case nicely prosecutes the argument that section 745 violates the separation of powers. The argument goes that while the legislature sets the rules for litigation, its authority has limitations. In particular, the rules set by the legislature may not trespass upon a court’s core decision-making power. This core power includes the discretion to grant an adjournment for a party to get a lawyer. Nothing enhances the truth finding function (which after all is part and parcel of deciding a case) more than dueling advocates. Given this rather large benefit, the court concluded that “it is not competent for the [legislature to preclude absolutely the granting . . . of an adjournment in all cases regardless of the circumstances” (191 Misc 2d at 59).
This is a fair analysis but it misses the point. The analysis is built upon the implicit assumption that section 745’s 10-day limit is a mere litigation rule. In most simplistic terms, legislatures enact two types of law: Substantive laws which grant rights, impose duties or proscribe actions and process laws which govern how litigation is conducted. This court believes that a 10-day limit is better viewed as a substantive law, which makes all the difference in the outcome of the case.
This belief is predicated upon the history that brought RPAPL article 7 (a summary proceeding) into existence. The summary recovery of real property was first authorized in New York in 1820 (L 1820, ch 194). Prior to 1820 the only remedy which a landlord had to recover possession of property was an ejectment action—which was “an expensive and dilatory proceeding which in many instances amounted to a denial of justice” (Reich v Cochran, 201 NY 450, 453-454 [1911]). Significantly, delays caused social breakdowns by “prompting] landlords to short circuit the judicial process by resort to self-help” (Velazquez v Thompson, 451 F2d 202, 204 [2d Cir 1971] [internal quotation marks omitted]). Therefore, nonpayment summary proceedings provided an important “right of the landlord to the immediate possession of his real property” (Poulakas v Ortiz, 25 Misc 3d 717, 724-725 [Civ Ct, Kings County 2009] [citations and internal quotation marks omitted]).
Moreover, it seems not to be a coincidence that the summary proceeding takes less than a month—generally the quantum of time in which property is rented. The longest time between demand for rent and the eviction of the tenant, if the statute is *983 followed as written, is 28 days.[3] Thus, RPAPL article 7 provides assurance to landlords that they will lose no more than one month’s rent. Given that article 7 sprung to life to avoid prolonged litigation which in some cases triggered the undesirable side effect of self-help, the time to evict a nonpaying tenant is sacrosanct and the 10-day limit of section 745 is an essential part of keeping the process under a month.
No doubt that the time constraints imposed by section 745 affect litigation outcomes. Nevertheless, legislatures enact laws that hamper the adversarial system from getting to the truth. This is not because truth in litigation is an unimportant goal, but rather the legislature considers other societal goals greater.[4] In particular, when life, liberty and property rights are at issue, the legislature at times places strict deadlines on the judicial system, even if such time constraints lead to an injustice in a particular case. Here section 745 makes time (in the context of the recovery of property) more important than accuracy in litigation.
Based upon the history of RPAPL article 7, the court finds that section 745 (l)’s 10-day limit is not so much a procedure law as it is a property right. Here the time line created by RPAPL article 7 (of which section 745 [1] is an essential element) neither dictates the outcome of the case nor improperly intrudes upon the court’s decision-making function. Consequently, section 745 (1) is constitutional as applied in this case. Since the landlord did not consent to the tenant’s request for an adjournment beyond the 10-day limit, the court denies the request.

. For example, the legislature enacted CPLR 2201, 2004 which both expressly empower judges to stay, adjourn and extend proceedings as may be just with one proviso, which is applicable here, that no adjournment can be made if it is “otherwise prescribed by law.” (Cf. Matter of Brusco v Braun, 84 NY2d 674, 681 [1994].)

. It could be suggested that the court read the statute in a non-literal way to avoid reaching the constitutional question (see Totaram v Cordero, 2003 NY Slip Op 50663 [U] [Civ Ct, Kings County 2003]). Indeed, the canons of statutory construction command that a court construe an ambiguous statute to avoid a constitutional question (National Federation of Independent Business v Sebelius, 567 US 519, 562 [2012]). Here, the court has found the exception clause of section 745 (1) unambiguous and therefore any reliance on the constitutional avoidance canon would be improper (see Scalia & Garner, Reading Law: The Interpretation of Legal Texts § 38 at 247-248 [1st ed 2012]).
The court is not fond of this doctrine. While the doctrine has many thoughtful defenders, it is, at its core, just an alluring invitation to judicial mischief. Instead of doing what the judiciary should do, say whether a legislature lawfully exercised its power (under a straightforward reading of the statute), judges get to reshape statutes because one interpretation of the law raises in a judge’s mind “serious” constitutional questions—an altogether boundless adventure to be sure. Moreover, this ability to recast laws comes with the pleasant side effect of permitting a court to skip the burden of making tough and sometimes uncomfortable constitutional decisions.

. The time line breaks down as follows: there must be a three-day demand for rent (RPAPL 711 [2]); after the expiration of the three-day rent demand, RPAPL 733 mandates that a special proceeding be brought upon no less than five days and no more than 12 days’ notice. Once the action is before the court, trial must be held within 10 days of the first appearance (RPAPL 745 [1]). Finally, should a judge find for the landlord and issue a warrant of eviction, the earliest that a city marshal may evict a tenant is three days after the warrant is issued (RPAPL 749 [2]). Thus, the minimum time for landlords to take repossession of their property is 12 days and the maximum time is 28 days.

. For example, the law of privilege keeps facts (like communications between a husband and wife or between a priest and penitent) from factfinders. Although such evidence may be highly relative to, if not dispositive of a case, the protection of the relationship trumps reaching of the right result at trial.